# NEW YORK GASLIGHT CLUB, INC., ET AL. v. CAREY

No. 79–192.   Argued February 19, 1980—Decided June 9, 1980

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, STEWART, MARSHALL, and POWELL, JJ., joined, and in all but n. 6 of which BURGER, C. J., joined. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 71. WHITE and REHNQUIST, JJ., filed a dissenting statement, *post*, p. 71.

*Albert N. Proujansky* argued the cause for petitioners. With him on the brief was *Marvin Luboff*.

*James I. Meyerson* argued the cause and filed a brief for respondent.

*Harriet S. Shapiro* argued the cause for the United States et al. as *amici curiae* urging affirmance. With her on the brief were *Solicitor General McCree, Assistant Attorney General Days, Leroy D. Clark, Joseph T. Eddins,* and *Lutz Alexander Prager.**

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the question whether, under Title VII of the Civil Rights Act of 1964, a federal court may allow the prevailing party attorney's fees for legal services performed in prosecuting an employment discrimination claim in *state* administrative and judicial proceedings that Title VII requires federal claimants to invoke.

I

Respondent Cidni Carey, in August 1974, applied for work as a cocktail waitress with petitioner New York Gaslight Club, Inc. After an interview, she was advised that no position was available.

The following January, respondent filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that petitioners, the Club and its manager, had denied her a position because of her race. App. to Brief for Respondent a1–a3. As required by § 706 (c) of Title VII of the Civil

---

*Briefs of *amici curiae* urging affirmance were filed by *Robert Abrams,* Attorney General, *pro se, Shirley Adelson Siegel,* Solicitor General, *Judith T. Kramer, Arnold Fleischer,* and *Barbara Levy,* Assistant Attorneys General, and *Ann Thacher Anderson* for the New York State Attorney General et al.; by *Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston,* and *Bill Lann Lee* for the NAACP Legal Defense and Educational Fund, Inc.; and by *Charles C. Parlin, Jr.,* and *Peter Bienstock* for the Puerto Rican Legal Defense & Education Fund, Inc.

Rights Act of 1964, 78 Stat. 259, as redesignated, 86 Stat. 104, 42 U. S. C. § 2000e–5 (c), respondent's complaint was forwarded to the New York State Division of Human Rights (Division).

In May 1975, after an investigation during which respondent was represented by counsel,[1] the Division found probable cause to believe that petitioners had engaged in an unlawful discriminatory practice. Efforts at conciliation failed, and the Division, pursuant to N. Y. Exec. Law § 297 (4) (a) (McKinney Supp. 1979), recommended that a public hearing be held.

Counsel for respondent wrote to the EEOC on May 20, advising the Commission that respondent was proceeding in the Division. He asked that the Commission "reassume" jurisdiction over the claim so that, if necessary, respondent could obtain a right-to-sue letter at an appropriate time. On May 22, the EEOC responded, stating that an investigator would be assigned to respondent's matter as soon as possible.

The state administrative hearing was held on two separate days in late 1975 and early 1976. Both respondent and petitioners were represented by counsel. App. 68. No attorney for the State appeared. On August 13, 1976, the hearing examiner found that petitioners had discriminated against respondent because she is black. *Id.,* at 70. Petitioners were ordered to offer respondent employment as a cocktail waitress and to pay her back wages from August 1974. *Id.,* at 70–72. No attorney's fee was awarded.

Petitioners appealed to the New York State Human Rights Appeal Board, an agency established to hear appeals from orders of the Division. N. Y. Exec. Law § 297–a (McKinney 1972 and Supp. 1979). The Board held a hearing in December 1976 at which counsel for petitioners, respondent, and the Division appeared.

---

[1] Respondent was represented by counsel employed by the NAACP Special Contribution Fund.

Meanwhile, EEOC proceedings had begun. Giving due weight to the state finding of probable cause, see § 706 (b), 42 U. S. C. § 2000e–5 (b), the EEOC determined that there was reasonable cause to believe petitioners had violated Title VII. The EEOC's attempts at conciliation also failed. The Commission's General Counsel chose not to sue, and, as required by § 706 (f)(1), § 2000e–5 (f)(1), the EEOC issued respondent a right-to-sue letter. This was issued on July 13, 1977; respondent, under § 706 (f)(1), then had 90 days to file a Title VII action in federal district court.

On August 26, the Appeal Board confirmed the Division's order. Petitioners immediately appealed the Board's decision to the New York Supreme Court. The Division cross-petitioned for enforcement of its order.

On September 30, respondent filed suit in the United States District Court for the Southern District of New York, asserting claims under the Civil Rights Act of 1866, 42 U. S. C. § 1981, Title VII, and the Thirteenth Amendment. App. 29. Respondent alleged that petitioners did not hire her because she is black, and that petitioner Club had employed only four blacks as waitresses during its 20-year existence. The complaint sought a declaratory judgment that petitioners' practices were unlawful under federal law, an order requiring petitioners to hire respondent, backpay with interest, retroactive employment-related benefits, attorney's fees, and other appropriate relief. Petitioners' answer denied virtually all the allegations in the complaint and cited the pendency of the state proceedings as an affirmative defense.

The Appellate Division of the New York Supreme Court on November 3 unanimously affirmed the Appeal Board's determination. *New York Gaslight Club, Inc.* v. *New York State Human Rights Appeal Board,* 59 App. Div. 2d 852, 399 N. Y. S. 2d 158 (1977). Petitioners unsuccessfully moved for reargument, and then filed a motion with the New York Court of Appeals for leave to appeal.

On February 3, 1978, while that motion was pending, the Federal District Court held a pretrial conference, after which petitioners agreed that if the state court denied their motion for leave to appeal, they would comply with the Division's order. App. 73. One week later the New York Court of Appeals denied petitioners' motion. 43 N. Y. 2d 951 (1978).

The parties thereafter apparently agreed that the federal action could be dismissed, except for respondent's request for attorney's fees. See App. 75–79. Respondent sought an award for 82 hours of attorney's time. Of that total, 9 hours were spent in preparing and filing the EEOC charge and the federal suit, 22 hours were spent in preparing and presenting the case before the hearing examiner, 29 hours were spent in defending the Division's order before the Appeal Board and the state courts, and 22 hours were spent seeking the fee award. App. to Pet. for Cert. A39–A40.

In July 1978, the District Court dismissed respondent's complaint, App. 35, but left pending the application for attorney's fees. After further briefing, the court denied the fee request. 458 F. Supp. 79 (SDNY 1978).

The District Court found the propriety of the EEOC's issuance of a right-to-sue letter while state proceedings were pending "very doubtful." *Id.*, at 80. Although the EEOC's action had given respondent no choice but to preserve her rights by filing a complaint in federal court, the District Court ruled that the mere filing of a federal suit does not entitle an aggrieved party to attorney's fees. The court reasoned that the fortuity of a need to file a protective federal suit should not make the defendants responsible for the costs of representing the plaintiff in the state forums. *Id.*, at 81.

The District Court also relied on its conclusion that respondent "had the option of pursuing her state administrative remedies without incurring any expenses at all for legal services," since state law, N. Y. Exec. Law § 297 (4)(a) (McKinney Supp. 1978), provides that the case in support of the complaint is to be presented to the hearing examiner by one

of the attorneys for the Division. 458 F. Supp., at 81. The decision in *Parker* v. *Califano*, 182 U. S. App. D. C. 322, 561 F. 2d 320 (1977), upholding an award of attorney's fees for prosecution of a federal employee's Title VII claim in mandatory preliminary proceedings within the employee's agency, was distinguished on the ground that the agency did not provide an independent attorney to prosecute the complaint. 458 F. Supp., at 81.

A divided panel of the United States Court of Appeals for the Second Circuit reversed. 598 F. 2d 1253 (1979). The court ruled: "A complaining party who is successful in state administrative proceedings after having her complaint under Title VII referred to a state agency in accordance with the statutory scheme of that Title is entitled to recover attorney's fees in the same manner as a party who prevails in federal court." *Id.*, at 1260. The court relied on several factors in reaching its decision. Among them were the significant role of state human rights agencies in the Title VII enforcement scheme; the statute's strong preference for administrative resolution of a discrimination complaint; the importance of providing an incentive for complete development of the administrative record; the language of the statute's fee provision; and the desirability of encouraging a complainant to retain private counsel notwithstanding participation of a Division attorney at certain points during the state proceedings.

We granted certiorari, 444 U. S. 897 (1979), to consider this question that is significant to the enforcement of the antidiscrimination provisions of Title VII.

## II

Section 706 (k) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U. S. C. § 2000e–5 (k), provides:

> "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs."

The question presented is whether, in the words of the statute, respondent was the "prevailing party" in an "action or proceeding under this title." An examination of the language and history of the statute, the nature of the proceedings in which respondent participated, and the relationship of those proceedings to Title VII's enforcement mechanisms, together persuade us that Congress clearly intended to authorize awards of attorney's fees to persons in respondent's situation.

The words of § 706 (k) leave little doubt that fee awards are authorized for legal work done in "proceedings" other than court actions. Congress' use of the broadly inclusive disjunctive phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings. This conclusion is supported by a comparison of § 706 (k) with another fee provision in the same Act, namely, § 204 (b) of Title II, 78 Stat. 244, 42 U. S. C. § 2000a-3 (b). The pertinent language of § 204 (b) is identical to that of § 706 (k) except that § 204 (b) permits an award only with respect to "any action commenced pursuant to this title." The two provisions were enacted contemporaneously as parts of the Civil Rights Act of 1964. The omission of the words "or proceeding" from § 204 (b) is understandable, since enforcement of Title II depends solely on court actions. See *Newman* v. *Piggie Park Enterprises*, 390 U. S. 400, 401 (1968). It is apparent, therefore, that the two fee provisions were carefully tailored to the enforcement scheme of each Title. It cannot be assumed that the words "or proceeding" in § 706 (k) are mere surplusage.

It might be argued that the words "or proceeding" authorize fee awards only for work done in federal administrative proceedings,[2] such as those before the EEOC, but not for

---

[2] In cases involving federal employees, all the Courts of Appeals that have considered the question have upheld fee awards under § 706 (k) for work done in federal administrative proceedings that must be exhausted

state administrative or state judicial proceedings. This reading at least would not render the words "or proceeding" a complete nullity. We find nothing in the statute, however, to suggest that Congress intended to draw this particular line. Rather, other provisions of the statute that interact with § 706 (k); the purpose of § 706 (k); the humanitarian remedial policies of Title VII; and the statute's structure of cooperation between federal and state enforcement authorities, all point to the opposite conclusion.

Section 706 (k) authorizes a fee award to the prevailing party in *"any* . . . proceeding under this title."  (Emphasis added.)  The same Title creates the system of deferral to state and local remedies.  The statute uses the word "proceeding" to describe the state and local remedies to which complainants are required to resort.  For example, § 706 (c), 86 Stat. 104, provides:

> "[N]o charge may be filed . . . before the expiration of sixty days after *proceedings* have been commenced under the State or local law, unless such *proceedings* have been earlier terminated. . . .  If any requirement for the commencement of such *proceedings* is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the *proceeding* is based, the *proceeding* shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent. . . ."  (Emphasis added).

Indeed, throughout Title VII the word "proceeding," or its plural form, is used to refer to all the different types of proceedings in which the statute is enforced, state and federal,

---

as a condition to filing an action in federal court.  *E. g., Brown* v. *Bathke,* 588 F. 2d 634, 638 (CA8 1978); *Fischer* v. *Adams,* 572 F. 2d 406 (CA1 1978); *Parker* v. *Califano,* 182 U. S. App. D. C. 322, 561 F. 2d 320 (1977); *Foster* v. *Boorstin,* 182 U. S. App. D. C. 342, 561 F. 2d 340 (1977); *Johnson* v. *United States,* 554 F. 2d 632 (CA4 1977).

administrative and judicial.[3] The conclusion that fees are authorized for work done at the state and local levels is inescapable.

This Court recently examined the legislative history and purpose of § 706 (k). In *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412 (1978), it was noted that, although the legislative history of § 706 (k) is "sparse," 434 U. S., at 420, it is clear that one of Congress' primary purposes in enacting the section was to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Ibid.*, quoting 110 Cong. Rec. 12724 (1964) (remarks of Sen. Humphrey). Because Congress has cast the Title VII plaintiff in the role of "a private attorney general," vindicating a policy "of the highest priority," a prevailing plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances." 434 U. S., at 416, 417. See also *Newman* v. *Piggie Park Enterprises*, 390 U. S., at 402. It is clear that Congress intended to facilitate the bringing of discrimination complaints. Permitting an attorney's fee award to one in respondent's situation furthers this goal, while a contrary rule would force the complainant to bear the costs of mandatory state and local proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim.

Title VII establishes a comprehensive enforcement scheme in which state agencies are given "a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of the discrimination." *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 755 (1979). Congress envisioned that Title VII's procedures and remedies would "mes[h] nicely, logically, and coherently with the State and city legislation," and that remedying em-

---

[3] See, *e. g.*, § 706 (f) (1), 78 Stat. 260, as redesignated, 86 Stat. 105, 42 U. S. C. § 2000e–5 (f) (1) (court may stay "further proceedings" pending the termination of "State or local proceedings"); § 706 (i), 78 Stat. 261, as amended, 86 Stat. 107, 42 U. S. C. § 2000e–5 (i) (Commission may commence "proceedings" to compel compliance with court order).

ployment discrimination would be an area in which "[t]he Federal Government and the State governments could cooperate effectively." 110 Cong. Rec. 7205 (1964) (remarks of Sen. Clark).

Pursuant to this policy of cooperation, Title VII provides that where the unlawful employment practice is alleged to have occurred in a State or locality which has a law prohibiting the practice and in which an agency has been established to enforce that law, "no charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." § 706 (c). In practice, § 706 (c) has resulted in EEOC's development of a referral and deferral system, which the Court approved in *Love* v. *Pullman Co.,* 404 U. S. 522 (1972). When a charge is filed with the EEOC prior to exhaustion of state or local remedies, the Commission refers the complaint to the appropriate local agency. The EEOC then holds the complaint in "suspended animation." *Id.,* at 526. Upon termination of the state proceedings or expiration of the 60-day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint. *Ibid.*[4]

Of course, the "ultimate authority" to secure compliance with Title VII resides in the federal courts. *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 44–45 (1974). The statute

---

[4] Other provisions of Title VII also evidence the policy of promoting federal-state cooperation in enforcement. Section 706 (b), 78 Stat. 259, as redesignated, 86 Stat. 104, 42 U. S. C. § 2000e–5 (b), requires the EEOC to "accord substantial weight" to a state administrative determination, and § 709 (b), 78 Stat. 262, as amended, 86 Stat. 108, 42 U. S. C. § 2000e–8 (b), authorizes the EEOC to "cooperate with State and local agencies charged with the administration of State fair employment practices laws" in funding research and other mutually beneficial projects, and to enter into work-sharing agreements with those agencies to facilitate the processing of complaints.

authorizes civil enforcement actions by both the EEOC and the private plaintiff. After the deferral period, the EEOC assumes jurisdiction, and, "as promptly as possible" it determines whether there is probable cause to believe that the charge is true. § 706 (b). After an additional 30 days, the EEOC is authorized to bring an action, in which the complainant has an absolute right to intervene. § 706 (f). If the Commission does not file suit, or enter into a conciliation agreement to which the complainant is a party, within 180 days after it reassumes jurisdiction, it must issue a "right to sue" letter notifying the complainant of his right to bring an action within 90 days. *Ibid.*[5]

It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief. See *Alexander* v. *Gardner-Denver Co.,* 415 U. S., at 48–50.

The construction of § 706 (k) that petitioners advocate clashes with this congressional design. Complainants unable to recover fees in state proceedings may be expected to wait out the 60-day deferral period, while focusing efforts on obtaining federal relief. See n. 6, *infra.* Only authorization of fee awards ensures incorporation of state procedures as a meaningful part of the Title VII enforcement scheme.

The District Court felt that granting a fee award to respondent would be a "windfall" based on the unforeseeable fortuity that filing a protective federal suit became necessary. 458 F. Supp., at 81. We agree with the District Court that the

---

[5] We thus disagree with the District Court that the propriety of EEOC's issuance of the right-to-sue letter in this case is "very doubtful." 458 F. Supp. 79, 80 (SDNY 1978). As we read the statute, the Commission was required to issue the letter after 180 days, regardless of the posture of any state proceedings.

availability of a federal fee award for work done in state proceedings following EEOC referral and deferral should not depend upon whether the complainant ultimately finds it necessary to sue in federal court to obtain relief other than attorney's fees. But our agreement with the District Court compels us to reject its conclusion. It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level. Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that § 706 (f)(1)'s authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.[6]

## III

Against the strong considerations favoring an award of fees, petitioners make three arguments. First, they contend that awarding fees for work done in state proceedings for

---

[6] We note that if fees were authorized only when the complainant found an independent reason for suing in federal court under Title VII, such a ground almost always could be found. Section 706 (f)(1) requires the EEOC to give the complainant a "right to sue" letter if, after it assumes concurrent jurisdiction over the complaint, it does not sue within 180 days. Thus, after waiting 240 days (60 days deferral to the state or local agency and 180 days for the EEOC to act after deferral), the complainant appears to have an absolute right to resort to an action in federal court. The federal court may stay the action for a maximum of 60 more days, to permit completion of state proceedings. § 706 (f)(1). It took three years for the New York proceedings in this case finally to provide respondent all the relief she desired other than attorney's fees. It is doubtful that the systems of many States could provide complete relief within 240 days. The existence of an incentive to get into federal court, such as the availability of a fee award, would ensure that almost all Title VII complainants would abandon state proceedings as soon as possible. This, however, would undermine Congress' intent to encourage full use of state remedies.

which the State does not authorize fees [7] infringes on the State's powers under the Tenth Amendment. Second, they argue that Congress' intent to pre-empt the state law has not been clearly expressed. Third, they contend that even if § 706 (k) authorizes fees for work done in state proceedings in some instances, denial of an award here was within the District Court's discretion.

We must reject petitioners' Tenth Amendment argument. Congress' power under § 5 of the Fourteenth Amendment is broad, and overrides any interest the State might have in not authorizing awards for fees in connection with state proceedings. See *Hutto* v. *Finney,* 437 U. S. 678 (1978); *Fitzpatrick* v. *Bitzer,* 427 U. S. 445 (1976).

Petitioners cite *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U. S. 132 (1963), *Schwartz* v. *Texas,* 344 U. S. 199 (1952), and *Florida* v. *United States,* 282 U. S. 194 (1931), in support of their argument that Congress' intent to pre-empt state regulation of the administration of state proceedings is not clearly expressed in § 706 (k) and should not be inferred. We find these cases inapposite. Section 706 (k) does not "pre-empt" state law. "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander* v. *Gardner-Denver Co.,* 415 U. S., at 48–49. Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices. Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. § 706 (f)(1). One aspect of complete relief is an

---

[7] The Human Rights Law of the State of New York does not authorize an award of counsel fees for work done in either state administrative or judicial proceedings. See *State Commission for Human Rights* v. *Speer,* 35 App. Div. 2d 107, 111–112, 313 N. Y. S. 2d 28, 33 (1970), rev'd on other grounds, 29 N. Y. 2d 555, 272 N. E. 2d 884 (1971); *State Division of Human Rights* v. *Gorton,* 32 App. Div. 2d 933, 934, 302 N. Y. S. 2d 966, 968 (1969).

award of attorney's fees, which Congress considered necessary for the fulfillment of federal goals. Provision of a federal award of attorney's fees is not different from any other aspect of the ultimate authority of federal courts to enforce Title VII. For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to "supplement" the state remedy. The state law which fails to authorize backpay has not been pre-empted. In any event, if it can be said that § 706 (k) pre-empts the state rule, we believe that Congress' intent to achieve this result is manifest.

We also find no merit in petitioners' suggestion that denial of a fee award was within the District Court's discretion. As noted earlier, the court's discretion to deny a fee award to a prevailing plaintiff is narrow. Absent "special circumstances," see Newman v. Piggie Park Enterprises, 390 U. S., at 402; Christiansburg Garment Co. v. EEOC, 434 U. S., at 416–417, fees should be awarded. Petitioners argue that the availability of a Division attorney to present the "case in support of the complaint" is a "special circumstance" which should deprive a prevailing complainant of a fee award. Clearly, however, an attorney is needed to assist the complainant during the state proceedings, and the Division employee does not take the place of private counsel.

The New York state procedure, to which respondent's charge was referred, provides for adversary quasi-judicial hearings leading to findings of fact, administrative appeals, and judicial review. The first stage of the state administrative action is the investigation; this results in either a finding of probable cause or a dismissal of the complaint. N. Y. Exec. Law § 297 (2) (McKinney Supp. 1979). A finding of probable cause after investigation is a necessary prelude to the public hearing. § 297 (4) (a). State law makes no provision for the participation of a Division attorney in the investigation, and a complainant is not represented by a Division attor-

ney at this preliminary stage. See Brief for New York State Attorney General and New York State Division of Human Rights as *Amici Curiae* 4–5.

Following the investigation, the Division attempts to conciliate the complainant's grievance with the employer. N. Y. Exec. Law §§ 297 (3)(a), (b), and (c) (McKinney 1972). No Division attorney participates in the conciliation efforts on behalf of the complainant, and the Division staff is even empowered to execute a settlement agreement with the employer over the complainant's objections. § 297 (3)(c).

If efforts at conciliation fail and a hearing is scheduled, state law provides:

> "The case in support of the complaint shall be presented by one of the attorneys or agents of the division and, at the option of the complainant, by his attorney. With the consent of the division, the case in support of the complainant may be presented solely by his attorney." § 297 (4)(a) (McKinney Supp. 1979).

At the time of the hearing on respondent's complaint, however, the practice of the Division was to involve one of its attorneys only if the complainant was not represented by private counsel. Brief for New York State Attorney General and New York State Division of Human Rights as *Amici Curiae* 5.[8] Complainants were "encouraged" to obtain private counsel due to a growing caseload and staff limitations. App. to Pet. for Cert. A58–A59.

At the appellate level, the Division attorney appears only to support and seek enforcement of orders issued by the Division and the Appeal Board. N. Y. Exec. Law § 298 (McKinney Supp. 1979). The Division attorney does not

---

[8] On October 18, 1977, Division regulations were amended to provide for the presentation of the case in support of the complaint solely by the attorney for the complainant, upon consent of the Division. The regulation requires the Division attorney to submit a statement to the hearing examiner in lieu of appearance. 9 N. Y. C. R. R. § 465.11 (d)(2).

represent the complainant on an appeal from an order adverse to the claimant. In addition, the Division cannot appeal from an order of the Human Rights Appeal Board reversing a Division order. See Brief for New York State Attorney General and New York Division of Human Rights as *Amici Curiae* 5–6.

It is thus obvious that the assistance provided a complainant by the Division attorney is not fully adequate, and that the attorney has no obligation to the complainant as a client. In fact, at times the position of the Division may be detrimental to the interests of the complainant and to enforcement of federal rights. Representation by a private attorney thus assures development of a complete factual record at the investigative stage and at the administrative hearing. At both, settlement is possible and is encouraged. A Division employee cannot act as the complainant's attorney for purposes of advising him whether to accept a settlement. Retention of private counsel will help assure that federal rights are not compromised in the conciliation process.

If a Division attorney appears at the public hearing, he does not represent the interests of the complainant, but rather those of the State. *Id.,* at 5; App. to Pet. for Cert. A59–A60. He presents the "case in support of the complaint," not in support of the complainant. N. Y. Exec. Law § 297 (4)(a) (McKinney Supp. 1979). Upon appeal, the Division attorney is authorized only to support the order entered by the Division or the Appeal Board. Without doubt, the private attorney has an important role to play in preserving and protecting federal rights and interests during the state proceedings.[9]

---

[9] We also reject petitioners' argument, not suggested in the petition for certiorari, that respondent's representation by a public interest group is a "special circumstance" that should result in denial of counsel fees. Federal Courts of Appeals' decisions are to the contrary. See, *e. g., Reynolds* v. *Coomey,* 567 F. 2d 1166 (CA1 1978); *Torres* v. *Sachs,* 538 F. 2d 10, 13

In sum, we conclude that §§ 706 (f) and 706 (k) of Title VII authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII. We also conclude that no special circumstances exist in this case that would justify denial of a fee award.

The judgment of the Court of Appeals is therefore affirmed.

*It is so ordered.*

THE CHIEF JUSTICE joins the Court's opinion except footnote 6 thereof; in his view, resolution of the issue dealt with in that footnote is not necessary.

MR. JUSTICE WHITE and MR. JUSTICE REHNQUIST would reverse the judgment essentially for the reasons given by Judge Mulligan in dissenting from the judgment of the Court of Appeals.

MR. JUSTICE STEVENS, concurring in the judgment.

While I agree with most of what is said in the Court's opinion, it is useful to emphasize that this federal litigation was commenced in order to obtain relief for respondent on the merits of her basic dispute with petitioners, and not simply to recover attorney's fees. Whether Congress intended to authorize a separate federal action solely to recover costs, including attorney's fees, incurred in obtaining administrative relief in either a deferral or a nondeferral State is not only doubtful but is a question that is plainly not presented by this record.

---

(CA2 1976). Congress endorsed such decisions allowing fees to public interest groups when it was considering, and passed, the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988, which is legislation similar in purpose and design to Title VII's fee provision. See H. R. Rep. No. 94–1558, pp. 5 and 8, n. 16 (1976).

On July 13, 1977, when the EEOC issued respondent a letter notifying her that she had a right to file an action in federal court, and on September 30, 1977, when she commenced her federal-court action, state judicial review of the state administrative proceedings had not yet been completed. It was not until sometime in February 1978, after the federal judicial proceeding had been pending for several months, that all questions other than the fee issue were finally removed from the federal case. It is clear, therefore, that under the plain language of § 706 (k) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U. S. C. § 2000e-5 (k),* the Federal District Court then had jurisdiction to allow the prevailing party to recover attorney's fees as a part of her costs.

A quite different question would be presented if, before any federal litigation were commenced, an aggrieved party had obtained complete relief in the administrative proceedings. It is by no means clear that the statute, which merely empowers a "court" to award fees, would authorize a fee allowance when there is no need for litigation in the federal court to resolve the merits of the underlying dispute. Indeed, it is not even clear that the EEOC has the authority to issue a "right to sue" letter, empowering the complainant to bring suit in federal court, after the complainant has obtained complete relief on the merits of his claim in administrative proceedings. See § 706 (f)(1) of the Civil Rights Act of 1964 as amended, 42 U. S. C. § 2000e-5 (f)(1). In any event, the facts of this case present no occasion for the Court's resolution of the issue, *ante,* at 66. All that needs to be decided is whether an allowance of fees may properly cover the work

---

*That section provides in part:

"In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ."

performed in the administrative proceedings that were a prerequisite to the court action. I agree with the Court's disposition of that issue, and would also observe that the same analysis would apply to work performed in appearing before the federal agency in a nondeferral State.

Accordingly, I concur in the judgment.