**Karl C. MERTZ, Plaintiff-Appellant,**

v.

**John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.**

**No. 85–8391.**

United States Court of Appeals,
Eleventh Circuit.

April 22, 1986.

Henry L. de Give, Atlanta, Ga., for plaintiff-appellant.

Nina L. Hunt, Asst. U.S. Atty., Larry D. Thompson, Atlanta, Ga., for defendant-appellee.

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sit-

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and ATKINS *, Senior District Judge.

GODBOLD, Chief Judge:

Plaintiff Mertz claims an attorney fee under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, for legal services performed for him relating to his grievance asserting employment discrimination. The grievance was settled without his filing a formal complaint.

We state the facts guardedly because, under the settlement agreement Mertz withdrew complaints against the Army and Army officers, and the Army agreed to remove adverse comments concerning Mertz from his personnel file.

Mertz is a civilian equal employment opportunity manager at an Army base. After first conferring with his private civilian counsel, he presented to the commander a long memorandum of grievances, suggestions and demands. These were then embraced in a memorandum that was filed with the equal employment opportunity officer of the command, a civilian. The caption of the memorandum described it as comments concerning lack of support for and thwarting of affirmative action on the part of the Army officer under whose supervision Mertz worked and reprisals against Mertz because of his efforts to enforce laws and regulations against employment discrimination. Mertz made no assertion that he had been discriminated against because of race, color, religion, sex, or national origin; then and now his only assertions of discrimination against him concern alleged retaliation. The memo contained allegations of failure in the area of employment discrimination by the supervising Army officer and of actions by that officer impeding Mertz's efforts to prevent and eliminate discrimination. It is not pos-

ting by designation.

sible to identify precisely and to separate out matters described in the memo that are claimed to be retaliatory, acts simply charging failure of the Army to support equal employment opportunity, and acts depicting personal differences between Mertz and the supervising officer that might have no relation to discrimination. Included in the array of grievances and demands are proposals and demands addressed to the commander which under no theory could relate to alleged retaliation against Mertz.[1]

Mertz filed his memorandum with the command equal employment opportunity officer (a civilian) pursuant to 28 C.F.R. 1613.213, which provides for "precomplaint processing." This regulation sets out that an agency shall require that one who believes that he or she has been discriminated against must first consult with an equal employment opportunity counselor to try to resolve the matter. Mertz asked that a counselor be designated. He also stated in his cover letter that he would like to "move to withdraw" his "complaint," possibly even before the supervising officer knew of it.

Some two and a half months later Mertz wrote the equal employment opportunity officer to "continue processing" his complaint because things had not changed. He stated that he wanted "those portions of [his] allegations not falling in the EEO arena" to be channelled to proper military authorities, possibly the inspector general. The commander ordered the inspector general to investigate. The equal employment opportunity officer notified Mertz that his complaint alleging discrimination was being held in abeyance pending the inspector general's investigation. This letter stated that if during the course of the investigation discrimination issues were brought to light the equal employment opportunity office would pursue those issues in accordance with applicable regulations. Mertz's attorney, with whom he had conferred be-

fore he ever made known his complaints, objected to the inspector general's investigation on the ground that it was a retaliation.

While this investigation was going on, the Army officer who was at the center of Mertz's complaints notified him that his in-grade step increase was being withheld pending completion of the inspector general's investigation, "in view of concerns regarding your effectiveness in your position of Equal Employment Manager and your loyalty to this organization." During the investigation, and presumably as an incident to his interrogation, Mertz was notified that he was a possible suspect on charges of insubordination and making of malicious statements. As the investigation went on, counsel for Mertz again insisted that an EEO counselor should be appointed and the informal complaint procedure moved forward. After a time a counselor was designated "to conduct the informal aspects of [Mertz's] EEO complaint," and, after conferences between the commander, Mertz and the counselor, a settlement was reached. An agreement was signed that provided Mertz would dismiss all claims concerning discrimination. The agreement defined Mertz's role and responsibilities in his job. The Army agreed to grant Mertz his step increase retroactive to the date he was entitled to it. It agreed to close the inspector general's investigation without adverse findings against Mertz and to remove from Mertz's personnel file all derogatory information relating to his complaints. With respect to an attorney fee the settlement provided:

> The Agency shall pay reasonable attorney fees allowable in accordance with Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–16 and EEOC Reguation [sic] 29 C.F.R. § 1613.-217, 271(c)(1)(2) and applicable case law in the amount no greater than three

---

1. Such as a demand for increased funding for the equal employment opportunity office and a demand that the commander remove alleged instances of racial discrimination that Mertz states have occurred including, with respect to a named civilian employee nowhere else identi-

fied in the memo, that she be transferred to a non-supervisory position, and her alleged "racist/discriminatory behavior" be investigated. If racial discrimination existed at the post it may have represented a command failure, but it was hardly discrimination directed at Mertz.

thousand dollars ($3,000.00), such amount to be determined from the fee schedule, an itemized breakdown of fee charges, and other supporting documents submitted in strict accordance with 29 C.F.R. § 1613.271(c)(2) by Complainant's attorney and attached hereto as Inclosure 1. Complainant and Agency agree and stipulate that the issue as to the Agency's authority to grant attorneys fees and the amount of attorney fees if any, which the Agency may legally pay shall be severed from and not otherwise affect the other provisions of this Settlement Agreement; and further, that any issue regarding either the authority to pay or the amount of fees payable shall be conclusively decided by Department of Army, Washington, D.C. SAMR–SF GR, using the procedures and guidance specifically set out in Message P281436Z dated January 1983, Subject: Guidance on Payment of Attorney Fees and Costs Pursuant to 29 C.F.R. § 1613, attached hereto as Inclosure 2.

29 C.F.R. § 1613.271(c)(iv) provides:

(iv) Attorney's fees shall be paid only for services performed after the filing of the complaint required in § 1613.214 and after the complainant has notified the agency that he or she is represented by an attorney, except that the fees are allowable for a reasonable period of time prior to the notification of representation for any services performed in reaching a determination to represent the complainant.

The Army denied a fee on the ground that under this regulation an attorney fee could be paid for only services performed after the filing of the formal complaint required by § 1613.214. Mertz then brought this suit against the Secretary, asserting that the Army erred in this conclusion. The Secretary responded with a denial and an affirmative defense of waiver based on paragraph 9 of the agreement. The district court ruled that the Army erred—that it was authorized to pay a fee for pre-complaint services—but that by the settlement agreement Mertz had agreed to accept the decision of the Army as final. It is at least open to serious question whether Mertz's alleged waiver would operate to leave in effect a decision by the Army if that decision was made pursuant to an error of law. But we need not address this point because we conclude that the Army's decision that it lacked authority to pay a fee was correct.

Mertz sought a fee under 42 U.S.C. § 2000e–16(d), which incorporates, *inter alia*, the provisions of § 2000e–5(k):

In any action or proceeding under this subchapter the court, in its discretion may allow the prevailing party, other than the commission or the U.S., a reasonable attorney's fee as part of the costs....

In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) the Court said that the word "proceedings" included state and federal, administrative and procedural proceedings and upheld an award of attorney's fees for services rendered in state administrative proceedings in connection with an EEO charge. The Court noted with approval decisions by circuit courts upholding fee awards under § 2000e–5(k) for work done in federal administrative proceedings that must be exhausted as a condition to filing an action in federal court. 447 U.S. at 61–62, n. 2, 100 S.Ct. at 2029–30, n. 2. In *Parker v. Califano*, 561 F.2d 320 (D.C.Cir. 1977) the court upheld an award to a federal employee of attorney fees for time spent at both administrative and judicial levels in pursuing a Title VII claim that had been settled. The rationale of these cases is that services of an attorney at the administrative level are desirable and an integral part of the overall administrative-judicial scheme.

None of the foregoing cases involves services relating to pre-complaint processing under § 1613.213.

The pre-complaint grievance level is different in purpose and nature from the post-complaint procedure. It is informal. The identity of the complainant is confidential. The grievance need not even be written. The counselor has a duty to give counsel as well as to seek a solution on an informal basis. If this first level stage does not

bring the matter to solution, the aggrieved person must be notified of his right to file "a complaint of discrimination." Such a complaint, pursuant to § 1613.214, must be written and served upon various officials, and must be investigated. The investigator can administer oath, take statements of witnesses, may conduct hearings, make findings, and the agency decision is subject to appeal.

We agree with 29 C.F.R. § 1613.-271(c)(iv), which treats the pre-complaint processing of a grievance as not a "proceeding" for which attorney fees may be granted. This drawing of a line between the ameliatory system of .213 and the formal complaint procedure of .214 is not contrary to the statutory provisions authorizing fees (in the discretion of the agency) "in any action or proceeding." *See Smith v. Heckler,* 35 Emp.Prac.Dec. (CCH) ¶ 34.-652 (D.Ct.D.C., # CA–2976, Sept. 6, 1984).

> [T]here is simply no statutory authorization under Section 2000e–5(k) for the payment of attorney's fees for work done in connection with adverse action or grievance proceedings which occur prior to the filing of a formal EEO complaint.

Mertz makes an alternative argument that in the particular circumstances he is entitled to a fee for work done by his attorney at the pre-complaint level because the Army refused to treat his grievance as one alleging equal employment opportunity discrimination and declined to appoint a counselor and proceed with the procedures of § 1613.213 but rather subjected him to an inspector general's investigation.[2] We need not decide whether a fee may be allowed for services arising from an agency's refusal to entertain a grievance under § 1613.213. The facts do not support such a contention here. Mertz himself suggested that the non-EEO aspects of his memorandum might be appropriate for examination by the inspector general. The equal employment opportunity officer of the command expressed doubt whether the memorandum alleged employment discrimination under the Act and stated his intent to process discriminatory allegations pursuant to the Act if they surfaced during the inspector general's investigation. The withholding of the step increase is suspect but no more than that. The allegations and demands not even arguably retaliatory were of such nature that a commander would have been derelict not to investigate them, and to withhold promotion of the complaining party pending the investigation was not unreasonable.

AFFIRMED.

---

**2.** Mertz does not contend a fee should be allowed under the proviso of .217(c)(iv) relating to "services performed in reaching a determination to represent [him]."