820 F.2d 180
 43 Empl. Prac. Dec. P 37,103, 43 Empl. Prac.
Dec. P 37,253,
40 Ed. Law Rep. 68
 Freeman M. COOPER, Plaintiff-Appellant,
v.
WILLIAMSON COUNTY BOARD OF EDUCATION and Administrative Unit
of Williamson County, Tennessee and Kenneth L.M. Fleming,
Superintendent of Schools of Williamson County, in his
individual and official capacity, Defendants- Appellees.
 Nos. 85-6150, 86-5879.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 9, 1987.
Decided June 2, 1987.
Rehearing and Rehearing En Banc Denied July 22, 1987.
 
 Robert Belton, argued, Harvard Law School, Cambridge, Mass., and Richard Manson, Manson, Jackson and Associates, Nashville, Tenn., for plaintiff-appellant.
 Robert G. Wheeler, Jr., argued, Brown, Brown and White, Nashville, Tenn., for defendants-appellees.
 Before MARTIN, WELLFORD and NELSON, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Freeman Cooper, the prevailing party in an employment discrimination action, now seeks attorney's fees under Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(k), for work performed in resisting dismissal charges brought subsequent to his success in the district court. The district court found that Cooper, a black school principal, had been discriminated against by the Williamson County Board of Education, and required the School Board to give him a principalship. After the School Board complied with this order, the school superintendent brought dismissal charges for incompetency before the Board under Tennessee law. Cooper, who was represented by counsel, successfully resisted the charges. When Cooper sought attorney's fees in the district court for work before the School Board, the request was denied. The state dismissal hearing, which occurred after the Title VII action, was not a proceeding under Title VII because Cooper's participation was not a condition precedent to his pursuing his employment discrimination claim in federal court. Thus, Section 706(k) does not extend to the fee request. We affirm.
 
 I.
 
 2
 This appeal for attorney's fees is but the most recent saga of Cooper's fifteen year struggle to retain his position as a principal in the Williamson County public school system in Tennessee. In the culmination of this struggle in June 1984, the United States District Court for the Middle District of Tennessee ruled that the Williamson County Board of Education had discriminated against Cooper on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. The district court required the Board to reinstate Cooper as a principal and the court, in order to ensure compliance, retained jurisdiction.
 
 
 3
 In August 1984 the Board placed Cooper in the principal's position at Fairview High School, thereby displacing the experienced white principal at this predominantly white school. Cooper's year at Fairview was an eventful one to say the least, with bomb scares, student walk-outs and conflicts with the faculty. In early January 1985 Kenneth Fleming, the school superintendent, filed dismissal charges against Cooper with the Board pursuant to the Tennessee Teacher Tenure Act, Tenn.Code Ann. Secs. 49-5-501 et seq. (providing that teachers may be dismissed only for cause and that the causes for dismissal may be incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination). Fleming argued, essentially, that Cooper was insubordinant and incompetent, and sought to have him removed from the principalship at Fairview High School. Cooper succeeded in resisting the dismissal charges.
 
 
 4
 After his success at the Board's hearings, Cooper filed a fee petition with the district court seeking attorney's fees for work performed after that court's Title VII judgment reinstating him as principal. The district court, for analytical purposes, divided the request in two parts. The first category included "services rendered prior to the date on which dismissal charges were filed, and services rendered in connection with proceedings in [the district court]." More specifically, these services included following media reports, assisting Cooper with day-to-day administrative matters at Fairview High School, filing an Equal Employment Opportunity Commission charge with respect to a matter that was not brought before the district court, and making unsuccessful motions in the district court relating to the state dismissal proceedings. The court denied this part of the request. On appeal Cooper contends that the time spent by his attorneys following media reports and assisting with administrative matters at Fairview High School constituted reasonable monitoring and implementation of the district court's prior order. As we view the record, Cooper has not appealed that part of the district court's judgment regarding the denial of fees for work performed in filing the Equal Employment Opportunity Commission charge not brought before the court, nor has he challenged the denial of fees for work involved in making the unsuccessful motions.
 
 
 5
 The second category of legal work, which forms the crux of Cooper's appeal, "relate[d] to services rendered in preparation for, and participation in, the state dismissal proceedings." In denying this part of the fee request, the district court wrote that because the state dismissal proceedings were "not mandated by the provisions of Title VII and did not involve an attempt by [Cooper] to secure Title VII rights[,]" they were not an "action or proceeding" within the meaning of Section 706(k) and Cooper was thus not entitled to attorney's fees under that provision. Here, Cooper urges that the state dismissal proceedings were an "action or proceeding" within the meaning of Section 706(k) because those proceedings were useful and necessary to protect his Title VII rights, because the legal services provided in those proceedings constituted reasonable monitoring and implementation of the district court's prior order, and because the district court made those proceedings an integral part of the Title VII action.
 
 II.
 
 6
 Under the American Rule on attorney's fees, a federal court may not, several narrow exceptions aside, award attorney's fees unless expressly authorized by Congress. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Cooper seeks to convince us that Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(k) grants that authorization. That section provides:
 
 
 7
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs....
 
 
 8
 In New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court had the opportunity to consider the application of this provision to state administrative proceedings. The Court noted that the language of Section 706(k) clearly authorizes fee awards for work done in a "proceeding" other than a court action, and thus a Title VII prevailing party may get an award for fees from the losing party for work performed in a federal administrative proceeding. Id. at 61, 100 S.Ct. at 2029. In considering whether Section 706(k) also extended to state proceedings, the Court looked at the language of the provision and then at the structure of Title VII. First, it observed that the provision "authorizes a fee award to the prevailing party in 'any ... proceeding under this title.' " Id. at 62, 100 S.Ct. at 3030. Also, throughout the title "proceeding" and its plural form are "used to refer to all the different types of proceedings in which the statute is enforced, state and federal, administrative and judicial." Id. at 62-63, 100 S.Ct. at 2030 (footnote omitted).
 
 
 9
 The Supreme Court next pointed out that the same title creates an elaborate deferral system in which the state and federal institutions and remedies are to work together as one system. Title VII establishes a procedural structure in which claims are referred first to available state remedies and may be prosecuted in a federal forum only after the state remedies are exhausted or the deferral period expires. See Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (approving the referral and deferral system developed by the Equal Employment Opportunity Commission under Section 706(c)). In short, the claimant must first turn to state remedies, and may use federal remedies only when the state does not provide prompt or complete relief. As the Court explained, "It is clear from this scheme of interrelated and complimentary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination." Carey, 447 U.S. at 65, 100 S.Ct. at 2031. The Supreme Court consequently concluded that when a plaintiff is referred to state proceedings pursuant to Title VII, the state proceeding is a "proceeding under this title" and that a court may thus make an award for work performed in the state proceedings. Id. at 71, 100 S.Ct. at 2034; cf. Webb v. Dyer Board of Education, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (holding that because 42 U.S.C. Sec. 1983 does not require an exhaustion of state remedies as a precondition to pursuing a civil rights action in federal court, 42 U.S.C. Sec. 1988, the attorney's fees provision for Sec. 1983 does not authorize an award for work performed in such optional state proceedings).
 
 III.
 
 10
 Cooper seeks fees for work performed in resisting the dismissal charges brought before the School Board after the district court rendered its judgment in his Title VII case. Section 706(k) does not extend that far, however. Cooper was not referred to the dismissal proceedings sought under the Tennessee Teacher Tenure Act, Tenn.Code Ann. Secs. 49-5-501 et seq., and thus these were not proceedings under Title VII. That title is concerned with employment discrimination and requires referral only to state employment discrimination remedies. Cooper's dismissal charges, however, did not involve employment discrimination, but rather his competency as principal. In short, these state dismissal proceedings were not part of the "scheme of interrelated and complimentary state and federal enforcement" of the Title VII employment discrimination laws. Carey, 447 U.S. at 65, 100 S.Ct. at 2031.
 
 
 11
 True, as a practical matter and as Cooper argues, he had to participate in the dismissal hearing to keep his job, but that, without more, is not sufficient to turn the dismissal hearing into Title VII proceedings. To argue, as Cooper does, that Section 706(k) applies to these dismissal proceedings because the work was both useful and of a type ordinarily necessary to protect his Title VII rights demonstrates a misunderstanding of Title VII. Title VII forbids Cooper's employer from discriminating against him on the basis of race. It does not prevent an employer from discriminating on the basis of competency. If Cooper thought that the charges of incompetency and insubordination were a pretext and that the School Board or superintendent had been driven by racial animus, he should have brought, as the district court explicitly advised him, a contempt action in the district court. He never did so and we cannot impute such invidious motives to the Board or to the superintendent.
 
 
 12
 Cooper asserts that the district court made the state competency hearing part of the district court's proceedings and hence part of the Title VII action by maintaining jurisdiction. But the district court had already granted Cooper a Title VII judgment, and in no way mandated his participation in the state proceeding. This is quite a different case from Bartholomew v. Watson, 665 F.2d 910 (9th Cir.1982) (fee application made under 42 U.S.C. Sec. 1988), in which the federal court abstained under the Pullman doctrine and required the litigants to clarify state law issues in a state forum before proceeding with the civil rights action in federal court. In Cooper's case, the state proceedings dealt with no issue of state law that had a direct bearing on Cooper's case in district court and the court did not require him to pursue the state proceedings before returning to federal court. In fact, the district court's order requiring Cooper's reinstatement had already been satisfied and no issues remained for resolution in Cooper's Title VII claim.
 
 
 13
 Further, contrary to Cooper's assertions, the legal work performed by Cooper's counsel in resisting the state dismissal charges did not constitute reasonable monitoring and implementation of the district court's order. In making that argument, Cooper reminds us that in Northcross v. Board of Education, 611 F.2d 624, 637 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), we said that "[s]ervices devoted to reasonable monitoring of the court's decrees, both to insure compliance and to ensure that the plan is indeed working to desegregate the school system, are compensable services." The Northcross fee application involved work performed by counsel to ensure full compliance with a complicated school desegregation plan. Here, Cooper's remedy of reinstatement had already been executed before the dismissal charges were brought before the School Board. The district court did maintain jurisdiction over Cooper's case, but merely as a procedural step to ensure compliance.
 
 
 14
 Finally, as for the services provided by Cooper's counsel before the filing of the state dismissal charges, we must agree with the district court that they do not constitute reasonable monitoring of its earlier order. The district court's order that the Board reinstate Cooper as a principal did not require that his counsel follow media reports or advise him on day-to-day administrative matters faced in his job as principal. The district court quite correctly observed that although Cooper may consult with his attorneys about any matter, the defendants should not be required to reimburse him for work performed by his attorneys in connection with his responsibilities as principal.
 
 
 15
 The judgment of the district court is affirmed.
 
 
 16
 WELLFORD, Circuit Judge, dissenting in part.
 
 
 17
 I join the majority's opinion with respect to Parts I and II. I dissent, however, from the portion of the conclusion in Part III that holds that Cooper's attorneys are not entitled to receive fees for any work they performed after the final decision was rendered in the district court and before the State dismissal hearings began. In appropriate circumstances, a district court may award post-judgment attorney's fees to the prevailing plaintiff. E.g., Northcross v. Board of Education, 611 F.2d 624, 637 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).
 
 
 18
 The question on appeal is whether the district court abused its discretion by denying fees to the plaintiff under all the circumstances. Coulter v. Tennessee, 805 F.2d 146, 151-52 (6th Cir.1986); Rice v. Gates Rubber Co., 584 F.2d 135, 136-37 (6th Cir.1978) (per curiam); see Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).
 
 
 19
 Cooper, in the face of dogged opposition, won his discrimination suit against Williamson County, which was ordered to reinstate him as a high school principal. After fifteen years of struggle with the School Board, Mr. Cooper vindicated his rights. Within weeks, however, he was confronted with a "Motion for Relief" filed by Fleming, the Superintendent of Schools, in which Fleming sought permission to bring charges against him under the Tennessee Teacher Tenure Act. Fleming was the superintendent of Schools fifteen years earlier when Mr. Cooper's troubles began.
 
 
 20
 Cooper's attorneys necessarily met, discussed, and responded to Fleming's allegations of incompetency by filing, in the district court, a brief opposing the motion. All these proceedings were a direct consequence of the district court's June 22, 1984, decision enjoining the defendants from treating Cooper in a discriminatory manner. Cooper was required to oppose the motion to vindicate what he in good faith and with good cause felt to be his rights under the recent district court order. It should be noted that the district judge denied Cooper's fee request by defining the first "category" of services--"non-Board hearing" matters--as "services rendered prior to the date on which dismissal charges were filed, and services rendered in connection with proceedings in this Court." Dist.Ct.Memo. at 2 (filed Nov. 18, 1985) (emphasis added).
 
 
 21
 The district court denied fees for these services, however, because it "does not believe that the services rendered by counsel ... constitute reasonable monitoring and implementation of [its] previous order" and because "plaintiff did not succeed on any significant issue in the litigation with respect to the proceedings in this Court during the relevant time period." Dist.Ct.Memo. at 6-7. I do not believe plaintiff under these circumstances should have been subject to a requirement that he succeed again in vindicating his rights. The court offered no reason for its conclusory assertion that the services were not a "reasonable implementation". I believe the district court improperly lumped together the attorneys' services rendered in connection with responding to the motion for relief and the services rendered in connection with reviewing media reports and assisting Mr. Cooper with the administrative aspect of his new job, the latter being non-compensable. In such circumstances, I would find that the district court abused its discretion, and Cooper's attorneys were entitled to be reimbursed for their time spent in protecting their client's interests under a very recent judgment. I would, therefore, remand for a computation of fees which should be awarded for these limited services.
 
 
 22
 Due to the unique circumstances of this case, which took place over a protracted period of time, I believe also that the district court abused its discretion to the extent it did not allow a portion of the fee request for attorneys' services rendered immediately after the court's June 22, 1984, decision. Some amount of attorney fees are warranted on this record as reasonable monitoring and implementation to insure compliance with the judgment. Defendants' prior continuous opposition over a decade and a half justified Mr. Cooper's need to seek out and to rely upon his attorneys' advice to secure his interests under a favorable judgment. In summary then, I would reverse and remand for an award of part of the fees requested.
 
 
 23
 The district court also determined that Cooper was not entitled to attorneys' fees for representing him in the state dismissal hearing. I concur because I cannot conclude that the district court abused its discretion in this respect. Coulter, 805 F.2d at 151-52. I may have reached a different result in light of the long series of efforts by Mr. Fleming and Williamson County to frustrate Mr. Cooper's employment opportunities. The district court articulated, however, logical reasons for its refusal to make a fee award on this portion of the fee request. The district court properly apprehended the law to be applied. Though I may have differed on the result of applying that law to these facts, I cannot hold that the court abused its discretion with respect to this portion of the fee request. I accordingly CONCUR in this aspect of Part III of the majority's decision.