**Eudema P. GREENE, Plaintiff,**

v.

**SWAIN COUNTY PARTNERSHIP FOR HEALTH; and Swain County, Defendants.**

**No. CIV. 2:03CV246.**

United States District Court, W.D. North Carolina, Bryson City Division.

Oct. 6, 2004.

Eudema P. Greene, Whittier, NC, pro se.

James R. Morgan, Jr., Robert D. Mason, Jr., Womble, Carlyle, Sandridge and Rice, Winston–Salem, NC, for Defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's motion to compel Defendants to complete discovery, Defendants' motions to dispense with mediation and for summary judgment.

### I. FACTUAL AND PROCEDURAL HISTORY

Defendant Swain County Partnership for Health ("the Partnership") is an organization intended to identify the health needs of people of Swain County, North Carolina, and to develop local solutions to address those needs and promote general health in the county. Defendants' Brief in Support of Motion for Summary Judgment ["Defendants' Brief"], filed July 16, 2004, at 2. Upon receiving adequate grant money to hire a paid, full-time coordinator, the Partnership hired Plaintiff on March 12, 2003, as the Partnership's first paid employee. *Id.*, at 3. Bess Crider was the previous coordinator of the Partnership, and was appointed the chair of the Partnership some period after Plaintiff was hired.

As coordinator, the Plaintiff was paid through the payroll department of the Swain County Department of Health. Affidavit of Eudema Greene ["Greene Affidavit"], filed August 6, 2004, at 10. She was considered a probationary employee under Swain County personnel policy and thus could be removed "for causes related to performance of duties or for personal conduct detrimental to the agency[.]" Exhibit A, Swain County Personnel Policy, Article VII, sec. 2(A), *attached to* Affidavit of Charlotte Wilson ["Wilson Affidavit"], filed July 16, 2004; Wilson Affidavit, at 2.

On March 13, 2001, the day after Plaintiff was hired, following a teen pregnancy prevention meeting, Crider made a state-

ment in the presence of Plaintiff regarding teen pregnancies on the Cherokee Indian Reservation and her belief that the Cherokee Indians did not view teen pregnancy as a problem because the grandmothers often cared for the babies. Affidavit of Eudema P. Greene ["Greene Affidavit"], filed August 6, 2004, at 4. Plaintiff claims she was offended by the comments because she is a Native American and because she previously had a child while a teenager. *Id.; see also*, Plaintiff's Response to Defendants' Motion for Summary Judgment ["Plaintiff's Response"], filed August 6, 2004, at 13.

The next day, Plaintiff explained the previous day's events to Nichole Oocumma, a consultant with Healthy Carolinian, a state organization responsible for the certifications of the Swain County Partnership for Health. Defendants' Brief, at 6. At one point in the conversation, Plaintiff referred to Crider as "crazy," suffering from a mental disorder, and having made "racist comments." Affidavit of Nichole Oocumma ["Oocumma Affidavit"], filed July 16, 2004, at 2. Crider claimed the Plaintiff also referred to her on this day as "hyper" and "manic." Exhibit A *attached to* Affidavit of Bess Crider ["Crider Affidavit"], filed July 16, 2004.

During much of the period of Plaintiff's employment, the Partnership was working to apply for recertification by the state, a process Crider had previously completed successfully for the Partnership. Wilson Affidavit, at 3. As a result, the Board felt it was important that Crider and the Plaintiff work closely with one another during the process. *Id.*, at 3–4. However, the strained relationship between Crider and Greene made it very difficult for them to work together. Crider Affidavit, at 3. Plaintiff complained to Oocumma and the board that Crider was interfering with her duties and responsibilities as Coordinator. Oocumma Affidavit, at 2, 4, 5; Wilson Affi-

davit, at 3. Plaintiff also alleges that Crider used discriminatory slurs toward her on numerous occasions and at one point insisted that her conversations with Crider be either recorded or witnessed by a third party. Plaintiff's Response, at 11; Greene Affidavit, at 8. Oocumma listed numerous conversations she had with Greene or Crider, in which one of the two became upset or confrontational regarding her relationship with the other. Oocumma Affidavit at 2, 3, 5, 6. Crider identified six occasions after March 13, 2001, where she and the Plaintiff had confrontational conversations regarding their working relationship. Exhibit A *attached to* Crider Affidavit.

On June 19, 2001, after receiving a call from Crider regarding her relationship with the Plaintiff, Partnership board members Charlotte Wilson, Jay Kirby, and Jason Walls decided that the matter should be brought to the attention of the full Partnership board. Wilson Affidavit, at 4. On June 29, 2001, the full board of directors met and determined that Plaintiff's public comments made to Board members and Healthy Carolinian members regarding Crider violated Swain County personnel policies and were grounds for Plaintiff's termination. *Id.*, at 4–5. Neither Crider nor the Plaintiff attended or participated in the meeting. *Id.* The Plaintiff was terminated on July 3, 2001. *Id.*, at 5.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in April 2002, claiming she was discriminated against and terminated on the basis of her race. The EEOC made a determination that her claims had merit, and forwarded them on to the Department of Justice for their review before a right to sue letter was issued. The Justice Department, after deciding not to proceed on its own, sent Plaintiff a right to sue letter dated June 24, 2003.

Plaintiff filed her complaint on September 30, 2003,[1] alleging she was terminated on the basis of her race, retaliation for opposing racially discriminatory and unlawful practices, and she was subject to a hostile work environment, all unlawful under Title VII of the 1964 Civil Rights Act, 42 U.S.C.2000e *et seq.* (Title VII claims), and 42 U.S.C. § 1981 (§ 1981 Claims).

Defendants filed for summary judgment on July 16, 2004. Plaintiff filed her response on August 6, 2004, and Defendants filed their reply on August 19, 2004.

## II. JURISDICTION

### A. Title VII Claims

Title VII creates a cause of action for discriminatory discharge, retaliation, and a hostile work environment. However, before a federal court may assume jurisdiction for a claim under Title VII, a plaintiff must file a charge with and receive a determination from the EEOC that there is "reasonable cause" to believe that the claim of discrimination against the employer is valid. 42 U.S.C § 2000e–5(b). However, where there is also an applicable state law "prohibiting the unlawful employment practice alleged ... [and] authoriz[ing] a State or local authority to grant or seek relief for such practice," Title VII prohibits a plaintiff from filing a charge with the EEOC "before 60 days after proceedings have commenced under [the] State or local law, unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e–5(c). Therefore, a no-

tice of right to sue letter is valid only if the Plaintiff waited 60 days after the commencement of an action under applicable state law, if any, to file a charge with the EEOC.[2] Without a valid right to sue letter, a federal court lacks jurisdiction over the Title VII claims. *Davis v. North Carolina Dep't of Correction,* 48 F.3d 134, 140 (4th Cir.1995); *Henderson v. Employment Sec. Comm'n of North Carolina,* 910 F.Supp. 252, 253 (W.D.N.C.1995).

Defendants claim this Court lacks jurisdiction over the Plaintiff's Title VII claims because Plaintiff failed to pursue her claims under state law. Defendants allege that the Plaintiff is a state employee under N.C. Gen Stat. § 126–5. Therefore, under N.C. Gen.Stat. §§ 126–16 and 126–36, Plaintiff has claims for discriminatory discharge, retaliation, and harassment through the North Carolina Office of Administrative Hearings ("OAH"). N.C. Gen.Stat. §§ 7A–759, 126–36, 126–37.

Section 126–5 of the North Carolina General Statutes defines those employees covered under Chapter 126 as "(1) All state employees not herein exempt, and (2) All employees of the following local entities: ... c. County health departments and district health departments." N.C. Gen.Stat. § 126–5. Plaintiff admits she was "paid through the Swain County payroll [department] and set up as a Swain County Health [Department] employee," but asserts that she was not state employee. Greene Affidavit, at 10. However, the

---

1. Plaintiff's complaint was incorrectly stamped as filed October 9, 2003, the day Plaintiff's application to proceed without prepayment of fees was granted, instead of September 30, 2003, the day her complaint was presented to the Court with her application.

2. The Fourth Circuit explained the justification for this requirement in *Davis, supra:*
 This requirement is rooted in a "policy of cooperation" between the federal govern-

ment and the states, and is designed to give state agencies "a limited opportunity to resolve problems of employment discrimination and there by to make unnecessary, resort to federal relief by victims of discrimination."
*Davis, supra,* at 137 (quoting *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63–64, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)).

statute was written broadly to include others outside of those who are considered state employees. The statute specifically includes employees of local entities, including local health departments. N.C. Gen Stat. § 126–5. Plaintiff also asserts that she was an employee of Swain County Partnership for Health, a private organization and not the Swain County Health Department. However, the evidence shows otherwise. As Plaintiff admitted, she was paid through the Swain County payroll department as a Health Department employee. Greene Affidavit, *supra*. Health Department Interim Director Charlotte Wilson asserted her department was responsible for supervising the Plaintiff. Wilson Affidavit, at 2. Additionally, Plaintiff's termination letter was issued by the Swain County Health Department and signed by its interim director. Exhibit B, Letter from Charlotte Wilson to Eudema Greene, dated July 3, 2001, *attached to* Wilson Affidavit. Plaintiff was also subject to Swain County personnel policies and classified as a probationary employee under Article VII, section 2(a) of the Swain County Personnel Policy. Exhibit A, *attached to* Wilson Affidavit. Therefore, the Court finds that the Plaintiff, as a employee of the Swain County Health Department, was covered under Chapter 126 of the North Carolina General Statutes and, therefore, had a right under state law to pursue her discrimination claims through the OAH pursuant to N.C. Gen. Stat. §§ 126–16 and 126–36. Having a state law claim for her alleged discriminatory treatment, Plaintiff was required to wait 60 days after commencement of the state action before filing a charge with the EEOC; if she failed to do so, the EEOC's issuance of the right to sue letter would be invalid and this Court would have no jurisdiction over the Plaintiff's Title VII claims.

■ Plaintiff admits she did not file an appeal with the OAH pursuant to Chapter 126 but asserts she did attempt to exercise her rights under local law by requesting a hearing before the County Commission under the Swain County Personnel Policy, which was denied. Plaintiff's Response, at 7–8. The Court finds that appealing her termination to the Swain County Commission was not commencing proceedings under state and local law as required under Title VII. Upon a final termination from her employment with Swain County, including her appeal, Plaintiff was required to then appeal her termination to the OAH to commence proceedings under state or local law for purposes of Title VII, which she failed to do.

■ Under some circumstances, if a plaintiff fails to commence proceedings under state law prior to filing a charge with the EEOC, a valid right to sue letter may still be issued. To comply, the EEOC must refer the complaint to the appropriate state agency and then relinquish jurisdiction for a 60–day period. *Davis,* 48 F.3d at 137. Once the 60–day period has passed, the EEOC may then validly assume jurisdiction of the claim. *Id.* However, the state agency must consider the complaint under applicable state law and not merely review the allegations of federal law violations. *Id.,* at 139–40.

To illustrate, the Court in *Davis* found that the federal court lacked jurisdiction despite the EEOC having forwarded the plaintiff's complaint to the North Carolina OAH and waiting the requisite 60 days before issuing a right to sue letter. *Id.,* at 138–39. The Court found that because the complaint referred exclusively to federal law claims, and the OAH only considered the plaintiff's claims in the context of federal law, "proceedings under state law claims ha[d] not commenced for purposes of [Title VII]." *Id.,* at 139. Therefore, the Court lacked jurisdiction to hear the claims. *Id.*

Here, there is no evidence that the EEOC referred Plaintiff's claims to the OAH or that Plaintiff's claims were ever considered under state law. Plaintiff's charge of discrimination filed with the EEOC indicates that the Plaintiff requested the EEOC to file the charge with the State, but there is no evidence that this was ever done. Greene Deposition Exhibit 15, *attached to* Defendants' Brief. Regardless, even if the EEOC had referred the complaint to the OAH, there is no evidence that the claim was considered under North Carolina law instead of federal law. Plaintiff's charge filed with the EEOC only mentions claims under Title VII, as does the EEOC's determination notice that it had reviewed those charges. *Id.; see also,* EEOC Determination, *included in* Greene Deposition Exhibit 14, *attached to* Defendants' Brief. Because Plaintiff's charges had not been considered under state law, the EEOC could not issue a valid right to sue letter, and the Court does not have jurisdiction over her Title VII claims.

**B. § 1981 Claims**

■ The Court does have jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1981. 28 U.S.C § 1331. These claims do not require the Plaintiff to exhaust any administrative or state law claims before a federal court obtains jurisdiction.

**III. DISCUSSION**

**A. Plaintiff's Motion to Compel Discovery**

Plaintiff moves the Court to compel the Defendants to complete discovery. Plaintiff alleges that the Defendants failed to produce witnesses for deposition, failed to answer interrogatories submitted by the Plaintiff, and failed to produce documents subject to Plaintiff's requests. Plaintiff filed her motion to compel on July 22, 2004.

■ Pursuant to the February 18, 2004, Pretrial Order and Case Management Plan, discovery was to be completed by July 2, 2004, and all motions were to be filed by July 16, 2004. Plaintiff's motion to compel was filed 21 days after the discovery deadline and six days after the motions deadline; the motion is, therefore, untimely.

**B. Defendants' Motion to Dispense with Mediation**

In the Pretrial Order and Case Management Plan, the Court ordered mediation between the parties to be completed by July 9, 2004. On July 9, 2004, Defendants filed their motion to dispense with mediation because the parties had failed to agree on a mediator.

The Court finds mediation between the parties to be futile at this point in the litigation and will grant Defendants' motion.

**C. Defendants' Motion for Summary Judgment**

Summary judgment should be granted when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of material fact exists where there is evidence such that a reasonable jury could find for the non-moving party. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party who opposes a motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.

2003). Unsupported allegations and speculation are not sufficient. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). The Court must also consider the evidence in the light most favorable to the non-moving party. *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348.

Defendants have moved for summary judgment on several grounds;[3] the Plaintiff's claims under § 1981 fail because Defendants' action was not pursuant to an official policy or custom, and because Plaintiff has not proven all the elements of her claims to survive summary judgment.

■ When a claim is asserted against a governmental unit under § 1981, the exclusive federal remedies available to the Plaintiff are provided for under § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Thus, to succeed in a § 1981 claim against a governmental unit, a plaintiff must satisfy the burden under § 1983 and prove that the discrimination alleged is pursuant to an official policy or custom. *Id.*, at 735–36, 109 S.Ct. 2702; *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995) ("[T]he § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities.")

■ Plaintiff was an employee of Swain County and the Swain County Department of Health. *See infra*, Part II.A. Her discriminatory discharge, retaliation, and hos-

tile work environment claims seek recovery from a governmental unit employer. *See Dennis*, 55 F.3d at 153 (county employee suing Fairfax County, Virginia). Therefore, to succeed in her § 1981 claims, the Plaintiff must show that the alleged discrimination was pursuant to Defendants' official policy or custom. In this regard, Plaintiff has put forth no evidence showing the alleged discrimination by Swain County and the Swain County Partnership for Health was pursuant to official policy or custom. The only evidence she offers in response is that Swain County denied the appeal of her termination. Plaintiff's Response, at 11. This assertion, unsupported by documentation, does not establish an official custom or policy of Swain County. Therefore, Defendants motion is granted on this issue.

Nonetheless, Plaintiff has failed to put forth specific facts showing there is a genuine issue of fact for trial on her discriminatory discharge, retaliation, an hostile work environment claims.[4]

### 1) Discriminatory Discharge

When a plaintiff is unable to put forth direct evidence that her termination was based on racial discrimination, the Court will analyze her claim under the *McDonnell Douglas* framework. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

---

3. Defendants also move for summary judgment on the grounds that Plaintiff failed to file her complaint within 90 days of receiving the right to sue letter as required under Title VII. However, as noted *supra*, the Court does not have jurisdiction over the Title VII claims; therefore, this argument is not addressed.

4. The Court notes that the prima facie cases and McDonnell–Douglas framework applied to Plaintiff's discriminatory discharge, retaliation, and hostile work environment claims are identical whether the claims are under Title

VII or § 1981. *White v. BFI Waste Servs., L.L.C.*, 375 F.3d 288, 295 (4th Cir.2004) (discriminatory discharge); *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1048, 157 L.Ed.2d 891 (2004) (retaliation); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir.2001) (hostile work environment). However, as discussed, the Court does not have jurisdiction over the Plaintiff's Title VII claims, only Plaintiff's § 1981 claims.

L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first prove the prima facie case that her termination was based on race. To prove a prima facie case, the plaintiff must show: 1) the plaintiff is a member of a protected class; 2) the plaintiff had satisfactorily performed her job; 3) the plaintiff's employment was terminated; and 4) the plaintiff was replaced by someone of comparable qualifications outside the protected class. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the prima facie case is satisfied, the burden then shifts to the defendant to show that there is a legitimate non-discriminatory reason for the plaintiff's termination. *White v. BFI Waste Servs., L.L.C.*, 375 F.3d 288, 295 (4th Cir.2004). Once the defendant has put forth a legitimate reason, the burden then shifts back to the plaintiff to produce evidence that the proffered reason is not legitimate and is but a pretext for discrimination. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir.2004).

Without direct evidence that Plaintiff's termination was based on race, the Court proceeds under the *McDonnell Douglas* framework. The Court finds the Plaintiff has failed to prove a prima facie case of racial discrimination. The only element that Defendants have not disputed is that the Plaintiff's employment was terminated as the Partnership Coordinator.

Defendants challenge whether Greene has put forth evidence that she is a member of a protected class. Defendants' Brief, at 19–21. The Court has found very little case law on what is required to show membership in a protected class. In *Perkins v. Lake County Dep't of Utilities*, the district court, when faced with the same issue, found that an employee's membership in a protected class should be determined by the employer's reasonable belief. *Perkins v. Lake County Dep't of Utilities*,

860 F.Supp. 1262, 1277 (N.D.Ohio 1994). That court required only "some objective evidence" consisting of "physical appearance, language, cultural activities, or associations, so long as [it] lead[s] the employer to believe that a given employee is a member of that protected class[.]" *Id.*, at 1278.

For purposes of this analysis, the Court will follow the reasoning in *Perkins*. In a claim alleging termination based on racial discrimination, the employer's reasonable belief and knowledge that the employee is a member of a protected class is central to the employee's claim that she was fired on that basis. Defendants offer evidence that the Plaintiff was not Native American based on her birth certificate, those of her parents, the fact she is not an enrolled member of an Indian tribe, and Plaintiff's own representations on her employment application. Defendants' Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ["Defendants' Reply"], filed August 19, 2004, at 9. However, the Court finds that Plaintiff's assertions to Defendants that she was Native American prior to her termination are sufficient to show the Defendants had a basis to reasonably believe she was a member of a protected class. Plaintiff informed Crider on March 13, 2001, that she was Native American. Oocumma Affidavit, at 3; Greene Deposition, at 48. When the decision to terminate was made by the Partnership's board, they had been fully appraised of the relationship and confrontations between Greene and Crider, and surely knew that Plaintiff claimed she was Native American. *See* Wilson Affidavit, at 4–5 (stating the Board reviewed all the information available about the Plaintiff). Additionally, the Court has found no evidence that the Defendants challenged Greene's claims of being Native American when she made them or before she was

fired. The Court, therefore, finds that Plaintiff has proven she was a member of a protected class for purposes of proving her prima facie case.

However, Plaintiff has failed to put forth evidence that she was performing her job satisfactorily prior to her termination. Defendants have demonstrated that the working relationship between Crider and Greene had become unmanageable. Wilson Affidavit, at 3–4; Oocumma Affidavit, at 5; Crider Affidavit, at 3–4. While the Partnership's recertification application was completed by Plaintiff and Crider, Plaintiff at one point had refused to meet or even talk with Crider unless the conversation was recorded or the meeting was witnessed by a third party. Greene Affidavit, at 8. Through affidavits, Defendants have documented a tumultuous relationship between the Plaintiff and Crider. While the Plaintiff is not exclusively at fault with regard to the relationship with Crider, it does reflect poorly on her job performance at the Partnership. In response, Plaintiff claims she was performing her job satisfactorily and had been congratulated by members of the board following the Partnership recertification. *Id.,* at 7. However, these claims are not supported by evidence and as unsupported assertions, do not raise an issue of genuine fact to defeat summary judgment. *See Felty,* 818 F.2d at 1128 ("Unsupported speculation is not sufficient to defeat summary judgment motion.").

Plaintiff also failed to produce evidence that her position was filled by someone with comparable qualifications outside of her protected class. After her termination, Plaintiff's position at the Partnership was filled by Patricia Howard. Greene Affidavit, at 10; Defendants' Reply, at 10–11. However, Plaintiff has not offered evidence of Howard's qualifications or her race. Without this evidence, Plaintiff has failed to prove the final element of her prima facie case.

The Court need not complete the analysis under the *McDonnell Douglas* framework because Plaintiff has failed to put forth specific facts to prove her prima facie case and show there is a genuine issue of fact for trial.[5] Therefore, Defendants' motion on this issue will be allowed.

### 2) Retaliation

■ Title VII prohibits an employer from retaliating against an employee for opposing or complaining about an unlawful employment practice. 42 U.S.C. § 2000e–3(a). To prove a prima facie case, a plaintiff must show she was engaged in a protected action, the employer took adverse employment action against her, and there was a causal connection between the protected action and the adverse employment action. *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1228 (4th Cir.1998). Retaliation claims are also subject to the *McDonnell Douglas* analytical framework. *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 n. 1 (4th Cir.2000); *Karpel,* 134 F.3d at 1227–28. Once the prima facie case of retaliation has been proven, the defendant must put forth a legitimate non-discriminatory reason for the adverse employment action. *Nichols v. Ashland Hosp. Corp.,* 251 F.3d 496, 502 (4th Cir.2001) (citing *McDonnell Douglas, supra* ). The burden then shifts back to the plaintiff to show the proffered reason is merely a pretext for discrimination. *Id.* The plaintiff must show that the proffered reason is " 'unworthy of credence' or [offer] other forms of

---

**5.** The Court notes that if Plaintiff had proved her prima facie case of termination based on racial discrimination, the application of the remainder of the *McDonnell Douglas* framework would be identical to that under Plaintiff's retaliation claim in the next section. Under this analysis, Defendants' motion would still have been granted.

circumstantial evidence sufficiently probative of [retaliation]." *Mereish*, 359 F.3d at 336 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

 Plaintiff clearly satisfies the first two elements of her prima facie case of retaliation; she opposed the allegedly discriminatory comments by Crider, a protected activity under Title VII, and she was terminated by the Defendant. Greene Affidavit, at 4, 6. To satisfy the third element of the prima facie case, the Fourth Circuit has held that "very little evidence of a causal connection is required." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir.1998). The closeness in proximity of time between the protected activity and the adverse employment action may create a sufficient inference of causal connection. *Id.* The Fourth Circuit has generally found the causal connection element satisfied where the period of time between the protected activity and employment action is around three months. *See e.g., King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir.2003) (ten week period sufficient to satisfy prima facie causation requirement); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989) (three month period of time found sufficient to prove causal connection in prima facie case). Here, Plaintiff was employed by Defendants for just over three months. Plaintiff asserted her opposition to the perceived discrimination following the comments by Crider, *see* Oocumma Affidavit, at 2, and claims to have done so to the Partnership personnel committee as late as April 16, 2001, Greene Affidavit, at 6. This proximity, coupled with the fact that the statements causing Plaintiff's termination were in direct response to the allegedly discriminatory statements made to her, establishes a sufficient causal connection for Plaintiff to prove her prima facie case of retaliation.

 Defendants respond that Plaintiff was legitimately terminated for making inappropriate public comments about Crider. The Board cited these comments, made to Board members and Healthy Carolinian members, in the termination letter to the Plaintiff as grounds for her discharge. Exhibit B, *attached to* Wilson Affidavit. Additionally, the Defendants have presented evidence that Plaintiff's relationship with Crider, the Partnership's chair, had become unmanageable. The Defendants' submitted to the Court affidavits from Charlotte Wilson, a member of the partnership's board and Interim Director of the County's Health Department, and Nichole Oocumma, Healthy Carolinian consultant, which detailed encounters they had with the Plaintiff and Crider, and their knowledge of the problems that existed between the two women. Crider also submitted an affidavit outlining the confrontational nature of her professional relationship with the Plaintiff. In a list of encounters with the Plaintiff that Crider provided, she listed numerous occasions when the Plaintiff became angry with her or criticized her on the basis of her involvement with the Partnership. *See* Exhibit A, *attached to* Crider Affidavit. When brought to the attention of a few members of the Partnership's Board, they determined the strained relationship between Plaintiff and Crider warranted a review by the full board of directors. Wilson Affidavit, at 4. It was important to the Partnership that the two positions work closely together and, therefore, the rift between Crider and Plaintiff was an obstacle to the proper performance of the Plaintiff's duties and operation of the Partnership as a whole. Plaintiff was considered a probationary employee under Swain County personnel policy and, therefore, could be terminated for causes related to the performance of her duties and for con-

duct detrimental to the agency. Wilson Affidavit, at 2.

Given that the Defendants have offered a legitimate reason for the Plaintiff's termination, the burden shifts back to the Plaintiff to put forth evidence that the proffered reason is a pretext for racial discrimination. Plaintiff alleges that the Defendants' three-month wait from the time the comments were made until the time she was discharged is evidence that the comments are not a legitimate reason for her termination. Plaintiff's Response, at 11–12. However, the facts demonstrate that the entire board was not informed of Plaintiff's comments about Crider until the June 29, 2001, meeting when the decision to terminate Plaintiff was made. Wilson Affidavit, at 4–5. Additionally, under the policies for probationary employees in Swain County, the Defendants were authorized to hire Plaintiff as a probationary employee for a period of three to nine months, during which they could determine if her performance and conduct satisfied their standards. *See* Exhibit A, *attached to* Wilson Affidavit. Defendants were authorized to terminate Greene's employment for her conduct at any time during her probationary employment and were not required to do so immediately after the comments were made.

Plaintiff also asserts that her work relationship with Crider was not a valid reason for her termination. In her affidavit, Plaintiff states that after her initial confrontation with Crider, they were able to complete the Partnership's recertification application together and received praise from the board of directors for their efforts. Greene Affidavit, at 7. However, Plaintiff offers no evidence of this, only unsupported assertions. Additionally, even if she had been congratulated for this effort, the board could still have determined that her conduct and her overall work performance warranted her termination.

Plaintiff has not put forth sufficient evidence to prove that Defendants' proffered reason for her termination is a pretext for racial discrimination. Therefore, under the *McDonnell Douglas* analysis, Plaintiff has not met her burden and Defendants' motion is granted on this issue as well.

### 3) General Harassment Claim—Hostile Work Environment

Plaintiff alleges that she was continuously harassed at the workplace on the basis of her race. To prove a prima facie case of hostile work environment based on racial harassment, a plaintiff must show: 1) there was unwelcome harassment; 2) the harassment was based on race; 3) the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and 4) there is some basis for imposing liability on the employer. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998). In determining if the third element of the prima facie case is met, the Court must consider the frequency and severity of the harassment, whether it was physically threatening or humiliating, whether it reasonably interfered with work performance, and whether it resulted in physical harm. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A mere utterance " 'which engenders offensive feelings in an employee' " does not satisfy the element. *Id.* (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The severity of the harassment should be judged from "the perspective of a reasonable person in plaintiff's position, considering 'all the circumstances.' " *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118

S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

 Plaintiff has demonstrated that she was subjected to some instances of unwelcome racial harassment during her employment with the Defendants. Crider's comments following the March 13, 2001, teen pregnancy prevention meeting were certainly racially insensitive. Additionally, Defendants have acknowledged that the Plaintiff has demonstrated that Crider did use the term "Token Indian" on at least one occasion; however, Plaintiff's claims that her use of the term was "unabated", or "daily" are unsubstantiated. Defendants' Reply, at 7.

Plaintiff's brief and affidavit also allege other instances of harassment she faced while employed with Defendants. Plaintiff alleges that other Partnership members would laugh upon Crider's use of the term "Token Indian." Plaintiff's Response, at 7–8. Plaintiff also alleges that Crider made derogatory comments about her black hair and high cheekbones, qualities indicative of her Native American race, as well comments directly relating to her heritage. *Id.,* at 7. Plaintiff alleges she was subject to "constant insults and threats" from Crider and others to get along with Crider. *Id.,* at 3. However, Plaintiff fails to produce evidence of much of this alleged harassment, instead relying on vague assertions and allegations. Plaintiff was warned in the Court's July 22, 2004, *Roseboro* Order that she could not rest on her allegations and denials in defense of an opposing party's motion for summary judgment, "but must set forth specific facts that show there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The Court finds that Plaintiff's evidence of harassment does not rise to the level of severity and pervasiveness articulated by the Supreme Court in *Harris* to satisfy a prima facie case of a hostile work environment. Title VII hostile work environment claims are not designed to provide a remedy for every instance of verbal or physical harassment in the workplace. *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 183 (4th Cir.1998) (quoting *Oncale,* 523 U.S. at 80, 118 S.Ct. 998). The Defendants are also entitled to summary judgment on this claim.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion to compel is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants' motion to dispense with mediation is hereby **ALLOWED**.

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment is **ALLOWED**, and this case is hereby dismissed by way of Judgment filed herewith.

## *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendants' motion for summary judgment as to the Plaintiff's claim under Title VII is **ALLOWED**, and that claim is hereby **DISMISSED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Defendants' motion for summary judgment as to the Plaintiff's remaining claims is **ALLOWED**, and those claims are hereby **DISMISSED WITH PREJUDICE**.