**PCS PHOSPHATE COMPANY, INC., Plaintiff,**

v.

**NORFOLK SOUTHERN CORP. and Norfolk Southern Railway Company, Defendants.**

**No. 4:05–CV–55–D.**

United States District Court, E.D. North Carolina, Eastern Division.

Nov. 13, 2006.

Charles E. Raynal, IV, Parker, Poe, Adams & Bernstein, LLP, Raleigh, NC, Roy B. Thompson, II, Parker, Poe, Adams & Bernstein, LLP, Raleigh, NC, for PCS Phosphate Company, Incorporated, Plaintiff.

John S. Byrd, II, Bode, Call & Stroupe, Odes L. Stroupe, Jr., Bode, Call & Stroupe, Raleigh, NC, for Norfolk Southern Corporation, Norfolk Southern Railway Company, Defendants.

## DECISION AND ORDER

GATES, United States Magistrate Judge.

This action comes before the Court on the motion to compel by defendants Norfolk

Southern Corp. and Norfolk Southern Railway Company (collectively "Norfolk Southern") [DE # 30–1]. Norfolk Southern seeks an order compelling plaintiff PCS Phosphate Company, Inc. ("PCS") to respond to certain interrogatories and to proceed with a Rule 30(b)(6) deposition regarding information sought in the interrogatories and other matters. The motion was referred to the undersigned Magistrate Judge for review and decision pursuant to 28 U.S.C. § 636(b)(1)(A) [DE # 32]. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

**A. Overview of PCS's Claims.** PCS owns and operates a large phosphate mining and processing facility near the town of Aurora in Beaufort County, North Carolina ("Aurora Facility"). (Compl. [DE # 1] ¶ 1.) There is a single railroad line serving the Aurora Facility, the Lee Creek Rail Line, constructed in or about 1965 by Norfolk Southern. (*Id.* ¶ 8, 15.) Norfolk Southern has continuously provided rail transportation services to the Aurora facility over that line since its construction. (*Id.* ¶ 15.) PCS relies heavily on the line for delivery of raw materials and shipment of product. (*Id.* ¶ 13.) Provisions in various easements granted to Norfolk Southern in 1965 and 1966 for construction and operation of the Lee Creek Rail Line obligate Norfolk Southern to relocate the line in the event PCS determines that the line interferes with operations at the Aurora Facility ("Relocation Agreements"). (*Id.* ¶ 16.) In 2003, PCS formally invoked the Relocation Agreements and demanded that Norfolk Southern relocate the line. (*Id.* ¶ 30.) Norfolk Southern has refused to do so. (*Id.* ¶ 33.)

In its complaint, filed in May 2005, PCS asserts breach of contract and related claims against Norfolk Southern arising from its alleged noncompliance with the Relocation Agreements. (*Id.* ¶¶ 46–73.) In its answer [DE # 6], Norfolk Southern asserts, among other defenses, failure of consideration and frustration of purpose. (Ans., pp. 34–36.)

**B. Discovery Proceedings.** Norfolk Southern served PCS with Defendants' First Set of Interrogatories and Requests for Production of Documents on 3 January 2006. On 15 February 2006, PCS responded to this discovery, specifically objecting to Interrogatories 4, 5, and 12—15. (Defs.' Ex. 1; Plf.'s Ex. A.)[1] On 10 July 2006 Norfolk Southern served on PCS a notice of a Rule 30(b)(6) deposition for later in July. (Defs.' Ex. 2; Plf.'s Ex. B.) Norfolk Southern included with the notice a letter requesting that PCS respond to the foregoing interrogatories. (Defs.' Ex. 2.) Several of the topics designated in the notice are similar to those addressed in the interrogatories. (*Compare* Defs.' Ex. 1 *with* Plf.'s Ex. B.) On 14 August 2006, Norfolk Southern re-noticed the deposition for the agreed date of 31 August 2006. (Defs.' Ex. 3.) At Norfolk Southern's insistence, the deposition was to be held in Raleigh, North Carolina. (Defs.' Ex. 2, 3.) On 25 August 2006, Norfolk Southern sent PCS another letter requesting supplementation of its responses to the interrogatories. (Defs.' Ex. 5.)

Norfolk Southern had not received the requested information by 29 August 2006 and attempted that day to cancel the deposition by letter telefaxed to PCS. (Defs.' Ex. 5, 7, 8.) PCS did not become aware of the letter until 30 August 2006, at which time the deponent was already en route from Illinois to North Carolina. (Defs.' Ex. 7; Plf.'s Ex. D.) PCS produced some of the requested information that same day. (Defs.' Ex. 6; Plf.'s Ex. D.) The following day, counsel and PCS's designated representative convened for the deposition as scheduled. (Plf.'s Ex. E.) PCS proffered the witness on the designated issues, but Norfolk Southern elected not to ask any questions on the grounds that the information it sought in the interrogatories had not been provided sufficiently in advance. (*Id.*) Norfolk Southern filed the instant motion on 14 September 2006 and PCS timely filed a response [DE # 31–1].

---

1. "Defs.' Ex. ___." refers to exhibits attached to Norfolk Southern's motion and docketed collectively under DE # 30–2. "Plf.'s Ex. ___" refers to exhibits attached to PCS's opposing memorandum and docketed collectively under DE # 31–2.

## DISCUSSION

■ **A. Interrogatories.** Norfolk Southern moves to compel responses to Interrogatories 4, 5, and 12–15.[2] A threshold issue is whether Norfolk Southern's motion is timely. Norfolk Southern filed its motion seven months after PCS served its objections to the interrogatories and only one day before the discovery deadline. *See* Order [DE # 29] (7 Sept. 2006). Fed.R.Civ.P. 37(a), which governs motions to compel discovery, does not specify a time limit for filing such motions. Generally, absent a specific directive in the scheduling order, motions to compel discovery filed prior to the discovery deadline have been held timely. *See Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 94 (1st Cir.1996) (holding that district court did not abuse discretion in denying motion to compel filed one month after discovery deadline); *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 647 (7th Cir.2001) (district court did not abuse discretion in denying motion to compel filed by defendants after discovery deadline, after a motion for summary judgment had been filed, and absent a showing by defendants of actual and substantial prejudice); *Greene v. Swain County P'ship for Health,* 342 F.Supp.2d 442, 449 (W.D.N.C.2004) (motion to compel filed twenty-one days after discovery deadline and six days after motion deadline deemed untimely). Therefore, although the Court is troubled by Norfolk Southern's delay in filing the motion to compel, it will be deemed timely because it was filed within the discovery deadline.

Norfolk Southern contends that the information its seeks is relevant to certain of its defenses. The Court agrees. Norfolk Southern bases its defenses of failure of consideration and frustration of purpose on the premises that the Relocation Agreements assumed that rail service by Norfolk Southern over the Lee Creek Rail Line would be the only shipping service available to the Aurora Facility; that another railroad, CSXT, is now also serving the Aurora Facility over the Lee Creek Rail Line; and that the Aurora Facility presently obtains shipping services through trucks and barges as well as the railroads. (Ans., pp. 34–36; Norfolk Southern's Motion, pp. 2–3.) The interrogatories in issue seek information regarding the Aurora Facility's use of CSXT, trucking, and barges to meet its shipping needs. This information clearly relates to Norfolk Southern's contention that the Aurora Facility uses shipping resources other than Norfolk Southern over the Lee Creek Rail Line.

■ PCS contends that the interrogatories are improper on the independent grounds that Norfolk Southern already has the information sought. The Court rejects this contention. While Norfolk Southern may have information regarding shipments made by CSXT over the Lee Creek Rail Line, PCS has not explained how Norfolk Southern would have information regarding shipments by truck and barge. Moreover, PCS has cited no authority for the proposition that an inquiring party's purported possession of information sought in interrogatories necessarily renders the interrogatories objectionable. Indeed, there can obviously be valid reasons for seeking information under such circumstances, including identification of any discrepancies in the respective parties' information. In any event, PCS has not shown undue burden from the interrogatories at

---

**2.** Interrogatory 4 reads: "State how much PCS paid (on an annual basis) to NS [Norfolk Southern] and separately, CSXT, for services provided to PCS along the Lee Creek Rail Line from the time when CSXT first began servicing PCS through the present."

Interrogatory 5 reads: "Identify the number of carloads and the tonnage of 'each commodity' that CSXT delivered and picked up on an annual basis since CSXT began servicing PCS through the present date."

Interrogatory 12 reads: "Identify the tonnage of each commodity shipped to and from PCS via truck and/or barge since January 1, 1999."

Interrogatory 13 reads: "Identify the amounts spent from January 1, 1999 to present, by commodity and tonnage, on all shipments that moved from or to PCS via truck or barge."

Interrogatory 14 reads: "With respect to all shipments that moved from or to PCS via truck or barge since January 1, 1999, indicate how many of the shipments were paid for and how much tonnage was paid for by the third party shipper or receiver."

Interrogatory 15 reads: "With respect to all CSXT rail shipments since January 1, 1999, how many of the shipments were paid for and how much tonnage was paid for by the third party shipper or receiver." (Plf.'s Ex. A; Defs.' Ex. 1.)

issue, which seek a limited amount of discrete information.

■ PCS also contends that the interrogatories are objectionable because PCS seeks the same information through the Rule 30(b)(6) deposition and it cannot be required to provide the same information twice. Again, PCS's contention is unconvincing. While four of the interrogatories in issue (Int. 4; 5; 12 & 13) closely track designated deposition topics (Topics 2, 4, 5, respectively),[3] the remaining interrogatories (Int. 14, 15) and topics (Topics 3, 9, 10) do not cover identical ground. More basically, the notion that interrogatories and deposition topics should not overlap is unduly restrictive. Depositions provide a useful, if not essential, means to inquire further about information obtained through interrogatories.

■ PCS is on firmer ground with its contention that it has already provided much of the information sought in certain interrogatories. The Court views the documents produced by PCS on 30 August 2006 as fully responsive to Interrogatory 4 and partially responsive to Interrogatories 5, 12, and 13, in accordance with Fed.R.Civ.P. 33(d). The information missing with respect to Interrogatory 5 is the number of carloads inquired about; with respect to Interrogatories 12 and 13, all the information for the years 1999 and 2000; and additionally with respect to Interrogatory 13, the amounts spent on barge shipments, broken down by commodity.

PCS has produced no information responsive to Interrogatories 14 and 15.

PCS shall accordingly serve on Norfolk Southern the foregoing missing information sought by Interrogatories 5, 12, and 13, and complete answers to Interrogatories 14 and 15. Service shall be made by hand delivery on counsel for Norfolk Southern no later than 1:00 p.m. on 20 November 2006.

**B. Rule 30(b)(6) Deposition.** Norfolk Southern requests that the Court compel PCS to submit to another Rule 30(b)(6) deposition on the topics set out in its 14 August 2006 notice. The Court declines to do so.

■ Norfolk Southern already had the opportunity to conduct a Rule 30(b)(6) deposition of PCS on these topics. Norfolk Southern noticed the deposition for 31 August 2006 and PCS appeared for the deposition and proffered a witness on the designated topics. Norfolk Southern simply chose not to take the deposition. It did not even pursue the option of at least beginning the examination while reserving the right to recess and resume at a later date after resolution of the issues purportedly precluding completion of the deposition.

Norfolk Southern contends that the lack of responses to its interrogatories in advance of the deposition justifies its refusal to proceed. This contention is without merit. PCS was not obligated to respond further to the interrogatories prior to the deposition because it

---

**3.** The designated topics for the deposition read as follows (Defs.' Ex. 2, 3):

"2. How much PCS has paid (on an annual basis) to Norfolk Southern (NS) and separately, CSXT and its predecessors, for services provided to PCS along the Lee Creek Rail Line from the time when CSXT first began servicing PCS through the present as well as the total number of cars shipped via each carrier and an explanation as to why NS's share of the cars is steadily declining.

3. All matters regarding decisions relating to which carrier (rail, barge or truck) to employ for delivery and pick up of freight at the Lee Creek Facility, including deposition of person who determines/negotiates rates to pay to ship a particular commodity. Also, PCS employee who can readily testify as to the ability of PCS to utilize barge and truck traffic for inbound and outbound shipments, and if such methods cannot be utilized, the reasons therefore as well as the PCS criteria for barge and truck traffic.

4. The number of carloads and the tonnage of 'each commodity' that CSXT and its predecessors delivered and picked up on an annual basis since CSXT began servicing PCS through the present date.

5. The tonnage of 'each commodity' shipped to and from PCS via truck and/or barge the last ten years and the amounts spent for said shipments.

9. PCS's expected shipping needs for the next 15 years, and of this amount, approximately how much will Norfolk Southern ship and how much will CSXT ship. e.g. provide a predicted breakdown based on your knowledge of your shopping [*sic*] requirements between CSXT and NS.

10. All matters relating to PCS's suggestion that it might start switching its own freight within its property and how this might impact the amount of freight shipped by CSXT and NS respectively."

had timely objected to them. *See* Fed R. Civ. P. 33(b)(5); *Clinchfield R. Co. v. Lynch,* 700 F.2d 126, 132 n. 10 (4th Cir.1983) (noting that once a party files an objection to a document request, the burden shifts to the requesting party to file a motion to compel) (citing 4A J. Moore, J. Lucas & D. Epstein, *Moore's Federal Practice* ¶ 34.05[2] (2d ed.1982)). Norfolk Southern could have sought an order compelling PCS to respond in the seven months between the time of PCS's objections and the noticed date of the deposition, but it chose not to do so. Indeed, Norfolk Southern waited until two weeks *after* the noticed deposition date to file its motion to compel.

Norfolk Southern's delay belies its professed need to have the interrogatory answers before the deposition. The record indicates that Norfolk Southern did not even express this purported need to PCS until less than a week before the deposition was scheduled to be taken. Specifically, in its 25 August 2006 letter to Norfolk Southern, PCS requests that Norfolk Southern "have these supplemental responses to us prior to the depositions on Thursday, August 31, 2006." (Defs.' Ex. 4.) The one earlier request of record by Norfolk Southern for the answers, the 10 July 2006 letter accompanying the initial notice of the deposition, does not ask that the answers be provided prior to the deposition, even though the deposition was then scheduled to occur only four days later. (Defs.' Ex. 2.)

Moreover, the deposition as noticed was significantly broader in scope than the interrogatories. Half of the deposition topics (Topics 2, 4, 5) mirror interrogatories, but the other half (Topics 3, 9, 10) do not. Norfolk Southern has not demonstrated that its ability to examine PCS on these other topics was dependent on its having answers to the interrogatories.

In any event, PCS did provide Norfolk Southern before the deposition much of the information it requested. As discussed, on 30 August 2006 PCS provided Norfolk Southern with documents fully responsive to Inter-

rogatory 4 and substantially responsive to Interrogatories 5, 12, and 13, the interrogatories that relate most directly to topics designated for the deposition (Topics 2, 4, 5). Norfolk Southern has not explained convincingly why, to the extent that it actually needed any interrogatory answers before the deposition, the information provided was not sufficient for it to proceed.

Norfolk Southern has also failed to show why, having received the information the day beforehand, it did not have an adequate opportunity to review the information to a meaningful degree prior to the deposition. The information consists of only five tables of data spread over four pages. (Defs.' Ex. D, PCS 04122–04125.) This is not a case in which voluminous documents are produced to a deposing party the day before-or even during-a deposition.[4]

Norfolk Southern cannot justly rely on its attempt to cancel the deposition at the last minute. As indicated, PCS did not become aware of the letter seeking cancellation until the deponent was already in a plane traveling to Raleigh from Illinois. (Plf.'s Ex. D.) Norfolk Southern should have anticipated the need for the deponent to travel because of its own insistence that the deposition be held in Raleigh. (Plf.'s Ex. C.) Moreover, Norfolk Southern chose to communicate its attempt to cancel by telefax, rather than by more direct means such as telephone or email, that could conceivably have resulted in PCS obtaining notice prior to the deponent's departure. More fundamentally, though, cancellation could not have been justified on the grounds stated-lack of responses to the interrogatories-for the reasons discussed.

Norfolk Southern has therefore advanced no valid reason for its failure to proceed with the 31 August 2006 deposition it noticed. It has also not established that PCS bears any responsibility for the deposition not going forward. Under these circumstances, it would be manifestly unfair to require PCS to appear again for the deposition. Moreover, such a deposition would cause undue delay in the proceedings in this case. Norfolk South-

---

4. While Norfolk Southern found the headings on most of the tables illegible as initially telefaxed (Defs.' Ex. 7), the copies submitted with the instant motion are easily legible (Plf.'s Ex. D, PCS 04122–04125) and Norfolk Southern could have obtained like copies.

ern's request that the Court compel the taking of the deposition is therefore DENIED.

### CONCLUSION

For the foregoing reasons, Norfolk Southern's motion to compel is GRANTED IN PART and DENIED IN PART with respect to the interrogatories at issue. PCS shall hand deliver to Norfolk Southern's counsel by 1:00 p.m. on 20 November 2006 the information detailed above not yet produced in response to Interrogatories 5, 12, 13, 14, and 15. The motion to compel is DENIED with respect to the Rule 30(b)(6) deposition at issue.

