**Adrienne ALSTON, Armando Jaime, and Necole Mance, Plaintiffs**

**v.**

**The Commonwealth of MASSACHU-SETTS, Boston Public Schools, et al., Defendants.**

**Civil Action No. 09–10793–EFH.**

United States District Court, D. Massachusetts.

Oct. 13, 2009.

As Amended Oct. 14, 2009.

---

**120**

Tyler H. Fox, Tyler H. Fox, Esq., Cambridge, MA, for Plaintiffs.

Michael B. Keating, Robert E. Toone, Jr., Catherine H. Wicker, Foley Hoag LLP, Jennifer G. Miller, Massachusetts Attorney General's Office, Ian D. Prior, City Of Boston Law Department, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This case comes before the court on three motions to dismiss: Defendants Boston Public Schools', Carol Johnson's, the Boston School Committee's, the City of Boston's, and Thomas Menino's Motion to Dismiss Plaintiffs' Action in its Entirety with Prejudice Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 11); State Defendants' Partial Motion to Dismiss (Docket No. 14); and Defendant NCS Pearson's Motion to Dismiss (Docket No. 15).

The court grants the motions to dismiss and dismisses this action in its entirety.

*Background*

The court grants a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in those instances in which the plaintiff has failed to state a "plausible" claim for relief. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A "plausible" claim is one in which the court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Given that this case comes to the court on a motion to dismiss, the court must accept as true all factual allegations as set forth in the complaint. *Altern. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 36 (1st Cir.2001). For practical purposes, the ten defendants can be divided into three groups: the City of Boston defendants, the Commonwealth of Massachusetts defendants and NCS Pearson, the company which develops and administers the Massachusetts Tests for Educator Licensure for the Commonwealth. The ten defendants are: the Commonwealth of Massachusetts; the Boston Public Schools; Carol Johnson, in her capacity as superintendent of the Boston Public Schools; the Boston School Committee; the City of Boston; Thomas Menino, in his capacity as mayor of the City of Boston; the Massachusetts Department of Elementary and Secondary Education; Mitchell Chester, in his capacity as Commissioner of the Massachusetts Department of Elementary and Secondary Education; Deval Patrick, in his capacity as governor of the Commonwealth of Massachusetts; and Evaluation Systems Group of Pearson a/k/a National Evaluation Systems, Inc. ("NCS Pearson").

The plaintiffs (the "Teachers") are three former Boston Public School teachers: Adrienne Alston, Armando Jaime and Necole Mance. The Teachers claim that the Massachusetts Tests for Educator Licen-

sure (the "MTEL") have a disparate impact on minorities and non-native English ("ESL") speakers.[1]

The plaintiffs were fired by the city for failing to pass the MTEL, an exam required for licensure as a public school teacher in Massachusetts. Massachusetts first administered the MTEL in 1998. According to the Teachers' complaint, each of them took the MTEL "multiple times," but all three of them never passed the exam.[2] Despite their failures, for several years, the state gave the Teachers waivers to continue teaching. In 2006, the state decided to no longer provide these waivers to the Teachers and therefore, the Teachers were no longer licensed to teach in Massachusetts. Most significantly, this meant the Teachers could no longer be educators in the Boston Public Schools.

The Teachers plead their case on behalf of themselves and a class composed of minority and ESL test takers. The Teachers are minorities. Ms. Alston and Ms. Mance are African–Americans, while Mr. Jaime is Hispanic. The Teachers allege that the MTEL's discriminatory impact prevents minority and ESL test takers, including the Teachers, from obtaining licensure as Massachusetts teachers, regardless of other measures showing teaching ability. To make this point, the Teachers allege that they all received "positive" evaluations during their tenure with the Boston Public Schools, but they were still terminated. The discriminatory impact consists of the disproportionately low rate at which non-white and ESL test takers pass the exam when compared with white and native English-speaking candidates.

One statistic the Teachers call attention to is that, allegedly, between 2005 and 2006, only 39% of African–American test takers passed the Communications and Literacy Skills portion of the MTEL, while the passage rate was 75.6% for whites.

The Teachers include seven counts in their complaint: Count I claims a violation by the defendants of Title VII of the Civil Rights Act of 1964; Count II claims a violation by the defendants of the Equal Protection Clause of the 14th Amendment; Count III claims a violation by the defendants of 42 U.S.C. § 1981; Count IV claims a violation by the defendants of the Equal Protection Clause of the Massachusetts Constitution; and Count V claims a violation by the defendants of Chapter 151B, § 4 of the Massachusetts General Laws.[3] Counts VI and VII are against NCS Pearson only. Count VI claims a violation of Massachusetts General Laws Chapter 93A, § 9, while Count VII claims a breach of contract. Thus, five of the counts are against all of the defendants, while the final two are against NCS Pearson only.

The Teachers demand three specific forms of relief. First, they seek that Massachusetts cease administration of the MTEL. Second, they seek that Massachusetts substitute a new form of teacher licensure. Third, they seek that they and any potential plaintiffs who join the action as a class, gain employment as teachers in Massachusetts and that all plaintiffs receive back pay, seniority and other benefits.

---

1. The court shall treat the MTEL as one exam for purposes of this decision even though the MTEL comprises multiple exams.

2. The Teachers filed an amended complaint. All references to the "complaint" are to this amended version.

3. The Teachers state in their opposition memorandum to NCS Pearson's motion to dismiss that they expect Counts I–V to be dismissed as against NCS Pearson.

This case involves a most serious matter—the education of our young and the professional qualifications of those whom we entrust to act as their teachers. Education is indispensable to the vitality and progress of society. Thus, teaching is a noble vocation which bears a fiduciary responsibility to preserve and transmit the culture of a nation. This near-sacred mission is accomplished by the clear and accurate use of language. For language is the source and channel of culture. It is language that forms the accumulation of knowledge which constitutes the foundation of culture and it is by language that the present generation is able to pass on its knowledge of the past to future generations.

For culture represents the whole complex of the behavior and thought of a society—the customs and mores, economics and history, moral and religious values, the arts and sciences, law and government—which nourish and enrich its life. The transmission of culture depends on education, which is rooted in the faculty of language and the knowledge and thought which language embodies.

Thus the good teacher is one who possesses a deep and extensive knowledge of his discipline and the faculty of clearly communicating that knowledge to his students. By his words the good teacher inspires the thirst for learning and nurtures and cultivates the intellectual skills which enable his students to pursue the life-long quest to become educated and the capacity to live a free and responsible life in society. A teacher's words are an influence without end.

*Analysis*

■ The court first evaluates Counts I and V of the complaint. The court considers these two counts together because they are similar. Count I claims a violation of Title VII of the Civil Rights Act of 1964.

Title VII is an employment discrimination statute that protects against discrimination in the workplace on the basis of race, color, religion, gender or national origin. *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir.2008). Count V concerns Chapter 151B of the Massachusetts General Laws, an anti-discrimination statute that, similar to Title VII, addresses employment discrimination. The Teachers have no "plausible" claim under these two counts because both counts suffer from procedural defects.

■ Two procedural requirements related to Title VII and Chapter 151B are relevant here. First, prior to filing suit in court, a plaintiff must exhaust his administrative remedies. Anti-discrimination agencies attempt to resolve Title VII and Chapter 151B complaints before the claims move to court. Massachusetts' anti-discrimination agency, the Massachusetts Commission Against Discrimination (the "MCAD"), hears both Chapter 151B and Title VII claims. Title VII claims ordinarily go to the MCAD's federal counterpart, the Equal Employment Opportunity Commission (the "EEOC"), but in Massachusetts, the MCAD has initial jurisdiction over federal claims, too. The EEOC's "deferral policy" appoints initial jurisdiction to state anti-discrimination agencies in states like Massachusetts that include such administrative agencies. *Isaac v. Harvard Univ.*, 769 F.2d 817, 818–19 (1st Cir.1985); 29 C.F.R. § 1601.13 (2009).

■ The administrative process is as follows. For a 151B claim, a plaintiff must wait 90 days after filing his charge with the MCAD before filing in court. *Everett v. 357 Corp.*, 453 Mass. 585, 904 N.E.2d 733, 747 (2009). For a Title VII claim, the claim will remain with the MCAD until the MCAD has terminated the claim or 60 days have elapsed. *See N.Y. Gaslight*

*Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). After the 60–day period or an earlier termination by the MCAD, the EEOC will "reassume" jurisdiction over the claim. *See id.* at 64–65, 100 S.Ct. 2024. The EEOC has up to 180 days to review and act on the claim before the plaintiff has the right to bring a lawsuit. *See id.* at 65, 100 S.Ct. 2024.

■ Second, Title VII and 151B claims have expiration dates. For both 151B and Title VII, the plaintiff must file his complaint within 300 days of the alleged discriminatory act. Mass. Gen. Laws. Ch. 151B, § 5 (2003); 29 C.F.R. § 1601.13(b)(1) (2009). Determining what constitutes the discriminatory act is fairly straightforward in cases like the one at hand. The discriminatory act occurs when the employer decides to terminate the employee and notifies the employee of this decision. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (for Title VII); *see Abraham v. Woods Hole Oceanog. Inst.*, 553 F.3d 114, 117 (1st Cir.2009) (for 151B).

■ The Teachers fail to meet these two procedural requirements and their Title VII and 151B claims therefore do not make out a "plausible" claim for relief and must be dismissed. First, the Teachers are not properly before the court because they have not allowed the administrative process to take its course. The Teachers filed suit here on May 14, 2009 and they amended their complaint on June 11, 2009. Meanwhile, the Teachers filed with the MCAD on June 2, 2009 and June 8, 2009.

The Teachers' therefore amended their complaint less than two weeks after bringing their MCAD action. Two weeks is just a fraction of 151B's 90–day waiting period and Title VII's "60/180–day" waiting period required before seeking relief in court.[4]

■ Second, the statutes of limitations have run as well. A plaintiff must file a Title VII or 151B claim within 300 days of the discriminatory act. Here, the discriminatory act is the termination of the Teachers. It is unclear when the city exactly decided to terminate and notify the Teachers of the same, but it is clear that it occurred in or before 2006. Seeing that the Teachers filed with the MCAD on June 2, 2009 and June 8, 2009, 300 days have undoubtedly passed and the Teachers are beyond the statutes of limitations for seeking relief under 151B and Title VII. The Teachers' 151B and Title VII claims are too late and thus invalid. In sum, the Teachers have not exhausted their administrative remedies, and most troublesome for the Teachers, the statutes of limitations have run on their claims. Counts I and V are dismissed.

■ Next, the court turns to Counts II, III and IV. These, too, are related. Count II alleges an equal protection violation under the 14th Amendment of the U.S. Constitution. Count III alleges a violation of 42 U.S.C. § 1981. Section 1981 assures that the right to contract in the United States is free of any racial discrimination. *See* 42 U.S.C. § 1981 (2006). Count IV alleges a violation of the Massachusetts Equal Protection Clause. In order for a plaintiff to make a claim for

---

**4.** The Teachers demonstrate difficulty observing the procedural standards designated for their kind of discrimination suit. While the Teachers filed an amended complaint in this court after filing with the MCAD, they filed their original complaint in this case before initiating an MCAD review. Moreover, the Teachers waited until June 2, 2009, several weeks after filing their original complaint in this court, to lodge their complaint with the MCAD. These missteps further exhibit the procedural infirmities impairing the Teachers' lawsuit.

discrimination under any of these laws, the plaintiff must allege purposeful, intentional discriminatory treatment by the defendants. Allegations of discriminatory impact alone are insufficient for claimed violations of the 14th Amendment, § 1981 or the Massachusetts Equal Protection Clause. *Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 390–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (for § 1981); *Wirzburger v. Galvin*, 412 F.3d 271, 284–85 (1st Cir.2005) (for 14th Amendment); *Cote–Whitacre v. Dep't of Pub. Health*, 446 Mass. 350, 844 N.E.2d 623, 647–48 (2006) (for Massachusetts Equal Protection Clause).

■ These counts must be dismissed because the Teachers do not allege discriminatory treatment, they allege only discriminatory impact. Given that the Equal Protection Clause of the 14th Amendment, § 1981 and the Massachusetts Equal Protection Clause only protect against charges of discriminatory treatment, and not discriminatory impact, these three laws do not protect against the discriminatory impact the Teachers allege here. Liability does not lie without this necessary element and these claims therefore do not amount to a "plausible" claim for relief. Counts II, III and IV are dismissed.

■ Counts VI and VII are against NCS Pearson only. Count VI claims that NCS Pearson violated section nine of the Massachusetts Consumer Protection Statute, Mass. Gen. Laws Ch. 93A. The 93A statute is meant to protect against "immoral, unethical, oppressive or unscrupulous" behavior. *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 11 (1st Cir.2007) (*quoting PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975)); *Daley v. Twin Disc, Inc.*, 440 F.Supp.2d 48, 53 (D.Mass. 2006). Here, the Teachers' claims are defective; they state only that NCS Pearson violated 93A, without providing any allegations of bad faith or offensive business practices. Therefore, the Teachers' 93A claim does not constitute a "plausible" claim for relief. The court orders Count VI dismissed.

■ Count VII alleges a breach of contract. To properly allege a breach of contract under Massachusetts law, a plaintiff must allege the terms of the contract and what obligations the parties owed to one another under the contract. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194–95 (1st Cir.1996); *Gibbs v. SLM Corp.*, 336 F.Supp.2d 1, 16 (D.Mass.2004). The Teachers do not make such allegations. Similar to their 93A claim, the Teachers simply assert that NCS Pearson has breached a contract, without giving any facts about the terms or obligations created by this alleged contract. Without this basic information, the Teachers fail to "plausibly" claim a breach of contract violation under Massachusetts law. Count VII is dismissed.

■ The court also notes that the recent Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Iqbal* on the motion to dismiss standard further compel dismissal of Counts VI and VII. What is clear from *Twombly* and *Iqbal* is that a plaintiff cannot get beyond the pleadings stage by simply arguing that the law has been broken without some alleged facts to stand behind his legal claims. This is the Teachers' exact problem in Counts VI and VII. In both counts, the Teachers claim that NCS Pearson violated the law, but they provide no facts to back up these legal claims, thus lacking the factual enhancement critical to a properly pleaded complaint. Both *Twombly*

and *Iqbal* instruct that the claims be dismissed in such a scenario.

The MTEL prescribes the minimal standards of language and learning that are required to be met in order to qualify as a teacher in the Boston public schools. The principal purpose and function of the teaching profession is to educate the student (*See* Mass. Gen. Laws. Ch. 69 § 1 (2003) and the quality of that education is contingent upon the degree of excellence of the teacher). A teacher is accorded a position of prestige, privilege and trust for the benefit of the student and not for himself.

Minimal standards are as necessary to the teaching profession as they are to the legal and medical professions. For how else can the public be assured that a teacher is competent? A person who fails the bar examination does not practice law! A competent teacher is one who has thorough knowledge of his subject and the faculty of communicating that knowledge effectively to his students. No student deserves to suffer an inferior education because he was exposed to a teacher less than qualified. Society would be better served for plaintiffs to ameliorate their scholastic deficiencies by further disciplined study, rather than to seek to undermine the standards of a profession most essential to the vitality of a nation's culture.

*Decision*

Defendants Boston Public Schools', Carol Johnson's, the Boston School Committee's, the City of Boston's, and Thomas Menino's Motion to Dismiss Plaintiffs' Action in its Entirety with Prejudice Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 11); State Defendants' Partial Motion to Dismiss (Docket No. 14); and Defendant NCS Pearson's Motion to Dismiss (Docket No. 15) are ALLOWED.

This action is DISMISSED. A separate order of dismissal shall issue.

SO ORDERED.

### ORDER OF DISMISSAL

Pursuant to the Court's Memorandum and Order of October 13, 2009, this action is hereby DISMISSED.

SO ORDERED.