FILED
United States Court of Appeals
Tenth Circuit

June 13, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL BARRETT,

     Plaintiff - Appellee,

v.

SALT LAKE COUNTY,

     Defendant - Appellant,

and

LINDA HAMILTON,

     Defendant.

Nos. 13-4084 & 13-4125

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:10-CV-00792-DAK)**

---

Valerie M. Wilde (David H.T. Wayment with her on the briefs), Salt Lake County District Attorney's Office, Salt Lake City, Utah, for Defendant-Appellant.

Russell T. Monahan of Cook & Monahan, LLC, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

The trouble began when Michael Barrett, a Salt Lake County employee, helped a colleague pursue a sexual harassment complaint against her boss. The complaint was entirely warranted but some in management apparently didn't like the publicity. According to Mr. Barrett, his superiors thought him a noisy troublemaker and began a campaign to have him discharged or demoted. After he *was* demoted Mr. Barrett brought this lawsuit, alleging that the county violated Title VII by retaliating against him for helping a coworker vindicate her civil rights. *See* 42 U.S.C. § 2000e-3(a).

The jury found for Mr. Barrett. At trial the county argued that it disciplined Mr. Barrett because he was a poor worker. But the evidence showed that Mr. Barrett's fourteen years working for the county were marked only by promotions and positive reviews — that is, until he helped draw attention to his colleague's plight. Now on appeal, the county asks us to undo the jury's verdict but we can find no fault in the district court's careful treatment of the merits and see only a minor aspect of its attorney fees award requiring further attention.

\*

Most ambitiously the county argues that it is entitled to judgment as a matter of law. It is, the county says, because at trial Mr. Barrett didn't prove various things required to make out a "prima facie case of retaliation" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The county reminds us that a plaintiff seeking to establish a "prima facie" case of retaliation under

*McDonnell Douglas* must present evidence of three things — that he engaged in protected activity, that he suffered an adverse employment action, and that a close causal link exists between the two. If but only if the plaintiff can do all this, the ball bounces to the employer's court. It becomes the employer's obligation to present proof that it took the adverse action against the plaintiff for a legitimate, non-retaliatory reason. If the employer succeeds at that, the ball returns to the plaintiff who must show the employer's stated reasons are pretextual. *See, e.g.*, *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211-12 (10th Cir. 2008). According to the county, Mr. Barrett's claim in this case falters at the outset, at the prima facie stage of the analysis.

But while clearly demonstrating its familiarity with pre-trial motions practice in Title VII cases, the county here betrays a lack of familiarity with post-trial practice. Maybe it's because so few cases make it to trial these days. Whatever the reason, this court has explained for years that *McDonnell Douglas* and its burden-shifting framework play no role in assessing post-trial JMOL motions. By this point in the proceedings the *McDonnell Douglas* proxy "drops out" and we ask instead the dispositive underlying Title VII question: has the plaintiff presented enough evidence to warrant a jury finding that the adverse employment action taken against him was taken in retaliation for his protected civil rights activity? *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir.

1991); *see also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-15 (1983).

In fact, *McDonnell Douglas* today serves only a narrow function. It does not create a pleading requirement or apply in post-trial JMOL motions practice. At trial the jury need not be instructed under its terms. Even at summary judgment we won't use it for cases presenting direct evidence of discrimination. Instead, as things have evolved *McDonnell Douglas* has come to apply predominantly at summary judgment and there only to cases relying on indirect proof of discrimination. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (pleading); *Fallis*, 944 F.2d at 744 (post-trial JMOL); *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 997-98 (10th Cir. 2005) (jury instructions); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (direct evidence).

In fairness, the county's assumption that *McDonnell Douglas* and its bouncing burdens apply equally at summary judgment and after trial may be as understandable as it is mistaken. After all, summary judgment and JMOL pose essentially the same question at different points in the life of a case: can a reasonable jury find unlawful discrimination or retaliation on the facts presented? *See* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2713.1 (3d ed. 1998). Some of our colleagues have highlighted just this point and questioned whether *McDonnell Douglas*, even if now relegated largely to summary judgment,

continues to be helpful enough to justify the costs and burdens associated with its administration. *See, e.g.*, *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1224-28 (10th Cir. 2003) (Hartz, J., writing separately); Timothy M. Tymkovich, *The Problem with Pretext*, 85 Denv. U. L. Rev. 503, 528-29 (2008). But however that may be, this much is clear enough: this court has refused to extend *McDonnell Douglas* burden shifting into post-trial JMOL motions practice.

Neither is the county's procedural misstep its only problem. Even had the county asked us to decide the underlying JMOL question rather than apply the *McDonnell Douglas* proxy it would've been no better off for it. After trial, of course, we are obliged to view the evidence in the light most favorable to the jury's verdict. And doing that in this case we quickly encounter ample evidence from which a rational jury could have found that Mr. Barrett suffered unlawful retaliation in violation of Title VII — just as this jury did.

Working for the county seemed happy and productive enough for Mr. Barrett until he decided to help a colleague pursue her sexual harassment claim. For years he'd received promotion after promotion, good review after good review. But almost immediately after Mr. Barrett's supervisor learned of his involvement in the sexual harassment complaint, a disciplinary investigation began. At the end of it, three workers who offered to serve as witnesses for the sexual harassment victim found themselves the targets of disciplinary action and Mr. Barrett found himself demoted. The supervisor responsible for some of these

actions then somehow lost (or destroyed) the records that purported to justify the disciplinary action against Mr. Barrett. It seems, too, the supervisor was close to and responsible for hiring the individual responsible for the sexual harassment. Facts like these are more than enough to establish a mere "prima facie" case of unlawful retaliation under *McDonnell Douglas* — they suffice to support (if not compel) a rational inference that unlawful retaliation *in fact* took place. *See, e.g.*, *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1270 n.2, 1273 (10th Cir. 2006) ("We may reverse a jury determination only if the evidence points but one way and is not susceptible to any reasonable inferences supporting the nonmoving party.").

\*

Even if it's not entitled to judgment as a matter of law the county says it deserves a new trial because of a problem with the jury instructions. The district court told the jury that Mr. Barrett could prove a causal connection between his protected civil rights activity and his demotion in either of two ways. First, he could show that "but for" his protected activity he wouldn't have been demoted. Second, he could prove that his demotion was the product of "mixed motives" — partially the product of unlawful retaliation and partially the product of his own deficient work performance. The second instruction, we now know, was wrong. After the trial in this case the Supreme Court issued a decision explaining that in Title VII retaliation lawsuits courts must employ the "but for" causation standard,

not the "mixed motive" standard.  Given this, the county reasons, we must send this case back for a new trial.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013).

Were that the end of the story, the county might have a point.  But it isn't the end of the story — not even close to it.  Missing from the county's seeming syllogism are these (critical) facts.  In response to the court's special verdict form, the jury stated that Mr. Barrett *had* proved "but for" causation.  The jury expressly indicated that it relied *only* on a "but for" theory of causation when finding liability.  The jury reported, too, that it did *not* reach or rely on the alternative "mixed motive" theory presented to it.  With these additional facts in hand, we can be sure any error associated with the presentation of the mixed motive instruction was beside the point.  The jury told us about as plainly as it could that the mixed motive instruction played no role in its verdict.  To be sure, the county speculates that the instruction still might've played some secret and unknown role in the jury's deliberations.  But it's hardly our job to require district courts to redo long and expensive trials on the basis of such self-serving guesswork — let alone guesswork resting on an implicit assumption the jury lied.  Harmless instructional error is not reversible trial error.  *See Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009); *Lusby v. T.G. & Y. Stores, Inc.*, 796 F.2d 1307, 1310 (10th Cir. 1986).

At oral argument the county voiced a new and different objection to the jury instructions. This time the county took issue not only with the district court's (beside the point) "mixed motive" instruction but also with its (dispositive) "but for" instruction. Oral argument on appeal, though, is a pretty poor time to start lodging objections to jury instructions. After all, courts of appeals won't normally entertain an issue raised for the first time in appellate briefing — let alone at oral argument. And that's doubly true when an appellate brief expressly disclaims any interest in the issue. Something the county's brief did in this case, categorically representing to the court that the county "does *not* challenge the but-for instruction." Aplt. Opening Br., No. 13-4084, at 16 (emphasis added); *see Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009).

*

Turning from liability to remedy, the county asks us to overturn the district court's award of equitable relief. After Mr. Barrett's demotion, the county hired someone to take his old job. Because that person played no role in the county's Title VII violation, the district court didn't think it fair to order the county to displace him. Instead, the district court decided to leave Mr. Barrett in his current (demoted) position but to require the county to reinstate his pre-retaliation pay grade. The county decries this result as affording Mr. Barrett the "windfall" of more pay for less work.

- 8 -

That's a pretty bold claim. Everyone acknowledges a district court enjoys considerable discretion when fashioning equitable relief under Title VII. Discretion that embraces the power to restore — as much as possible — the plaintiff's position prior to the Title VII violation. *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1); *Dilley v. SuperValu, Inc.*, 296 F.3d 958, 967 (10th Cir. 2002). And that's just what the district court sought to do in this case — all while also aiming to respect the interests of an innocent third party. Surely the county doesn't mean to suggest the district court had to fire the innocent worker and give Mr. Barrett his job back. Neither can the county seriously suggest its decision to hire someone else as a result of its Title VII violation leaves the district court powerless to issue any equitable relief to Mr. Barrett. The fact is, defendants found liable for a tort or statutory violation can't usually be heard to complain about minor imperfections in equitable relief that arise only because of actions they took as a result of their unlawful conduct. When the county chose to hire someone to replace the wrongfully demoted Mr. Barrett it bore the risk that the day might come it would have to restore Mr. Barrett as much as possible to his former position. That day has come. "The most elementary conceptions of justice . . . require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946).

\*

Only the question of attorney fees remains. Really, the question here is narrower than even that. The district court awarded Mr. Barrett the fees he incurred in pursuing this lawsuit and no one challenges that award. But the court also awarded the fees Mr. Barrett incurred in an optional, internal grievance process before the county's "Career Service Council." It is these particular fees the county says were improper. And on that limited point we have to agree.

A successful Title VII plaintiff who *must* exhaust administrative grievance procedures as a precondition to bringing suit in court is entitled to the fees he incurs along the way. *See N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71 (1980). But a successful Title VII plaintiff who *chooses* to participate in an employer's optional grievance process — one not a prerequisite to suit — isn't. *See Manders v. Oklahoma ex rel. Dep't of Mental Health*, 875 F.2d 263, 266-67 (10th Cir. 1989). Everyone before us acknowledges that the grievance procedures at issue here were optional, internal procedures the county offered to unhappy employees. So it seems pretty plain that under *Manders* the district court could not award fees for them. For his part Mr. Barrett doesn't offer us any way to distinguish *Manders*. In fact, he doesn't bother even to cite the case or respond to the county's argument about it.

Instead, Mr. Barrett points outside the Title VII context. Like Title VII, 42 U.S.C. § 1988 authorizes attorney fees awards for successful civil rights

- 10 -

plaintiffs. Unlike Title VII, the civil rights statutes to which § 1988 applies don't usually require plaintiffs to exhaust state and local remedies prior to filing suit. Even so, the Supreme Court has suggested that § 1988 *does* allow district courts to award attorney fees for work in connection with optional pre-trial proceedings. At least when the work performed was "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quoting *Webb v. Cnty. Bd. of Educ.*, 471 U.S. 234, 243 (1985)). *But cf. N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) (district courts may award § 1988 fees only within an action to enforce one of the civil rights laws listed in § 1988). Mr. Barrett seems to wish that we would interpret Title VII in the same way — as affording district courts discretion to allow fees for legal work in optional grievance proceedings so long as the work was "useful and . . . ordinarily necessary."

Mr. Barrett's suggestion isn't without its force. This court and others have observed the standard for the award of attorney fees under § 1988(b) is generally the same under § 706(k) of Title VII. Why not, then, the same standard for determining whether optional proceedings can support attorney fees? *See Griffith v. Colorado*, 17 F.3d 1323, 1328 (10th Cir. 1994); *Bobbitt v. Paramount Cap Mfg. Co.*, 942 F.2d 512, 514 (8th Cir. 1991).

The answer, of course, is that *Manders* remains.  It is the law of this circuit and it controls in the Title VII context where this case arises.  Neither does *Manders* want for textual support or allies all its own.  Section 706(k) of Title VII authorizes courts to award a prevailing party its attorney fees "[i]n any action or proceeding under [Title VII]."  42 U.S.C. § 2000e-5(k).  And while it is one thing to say a compulsory antecedent administrative process is a part of the Title VII "action or proceeding," it does seem a different thing to suggest an optional workplace grievance procedure is too.  *See Manders*, 875 F.2d at 266-67.  Certainly the "useful and ordinary" standard appears nowhere in the text of Title VII.  And, in fact, many courts have read that law just as *Manders* has.  *See, e.g.*, *Mertz v. Marsh*, 786 F.2d 1578, 1581 (11th Cir. 1986) ("[T]here is simply no statutory authorization under [§ 706(k)] for the payment of attorney's fees for work done in connection with adverse action or grievance proceedings which occur prior to the filing of a formal EEO complaint."  (quoting *Smith v. Heckler*, No. CA 83-2976, 1984 WL 1067, at *4 (D.D.C. Sept. 6, 1984))); *Cooper v. Williamson Cnty. Bd. of Educ.*, 820 F.2d 180, 183 (6th Cir. 1987) (rejecting plaintiff's argument that post-lawsuit termination proceedings could support Title VII attorney fees); *Duello v. Bd. of Regents*, 501 N.W.2d 38, 45-46 (Wis. 1993); *Lenihan v. City of N.Y.*, 640 F. Supp. 822, 830-31 (S.D.N.Y. 1986); *see also* 21A Tracy Bateman Farrell et al., *Federal Procedure, Lawyers Edition* § 50:1162 (2014); 14A C.J.S. *Civil Rights* § 710 (2014).

Perhaps there's some reply to all of this, some way to distinguish or limit *Manders*, but if there is Mr. Barrett hasn't told us what it might be, choosing instead to ignore the decision entirely.

Besides, even if *Manders* didn't stand in his way Mr. Barrett would still face an insurmountable problem. Nothing in his brief indicates how the work performed in his optional grievance process was "useful and of a type ordinarily necessary" to advance a Title VII case. To be sure, he *asserts* it was. But he doesn't identify any record facts or legal authority to support his (entirely conclusory) assertion. And this court is under no obligation to hunt through the record or develop arguments for a party that has declined to shoulder that work itself. *See, e.g.*, *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1268 (10th Cir. 2008).

Still Mr. Barrett does try one other and more speculative line of attack. Even if Title VII doesn't permit him to recover fees for his internal grievance proceeding, he argues the common law does. The common law, of course, generally entitles a plaintiff to recover expenses incurred in mitigating his damages. And Mr. Barrett says that's what he was doing when he hired a lawyer to try the county's internal grievance process. But Mr. Barrett's understanding of mitigation is surely a good deal broader than most. Under his logic, a plaintiff in any sort of suit could claim that his decision to hire an attorney — to try negotiation, arbitration, or mediation before suing — amounted to an effort to

mitigate his damages and demand all his pre-litigation fees. Such a result would, of course, do more than a little to upend the "American Rule" that parties must generally bear their own legal expenses. For that reason alone, Mr. Barrett's argument seems more than a little unlikely and he cites us to no authority that might make it seem any less so. Besides, in federal law attorney fees are usually awardable only when authorized by Congress. Courts are not empowered to grant fees based on a (peculiar) view of the common law inconsistent with what the applicable statute (here, § 706(k)) provides. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975) (Congress has not "extended any roving authority to the Judiciary to allow counsel fees . . . whenever the courts might deem them warranted.").

With that much decided, only one matter more remains: the question of the fees Mr. Barrett incurred in connection with this appeal. He seeks them; the county resists them. There's no question that § 706(k) permits us to award fees to a prevailing party on appeal, no question that the fees Mr. Barrett incurred in this appeal were incurred "in" a Title VII "action or proceeding." Admittedly, Mr. Barrett hasn't prevailed entirely in this appeal — we're requiring the district court to withdraw compensation for the fees he incurred in connection with his administrative grievance. But in this court he has achieved a near-complete victory and a complete victory on the merits. And that is enough to justify a reasonable fee award. "[T]he fact that we have cut down the district court's fee

- 14 -

award does not in itself justify trimming the award for fees in this court, given [the plaintiff's] status as an appellee defending with substantial although not complete success a district court's judgment in his favor." *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988).

*

The district court's judgment stands affirmed in all respects but one. On remand the court should eliminate any award of attorney fees Mr. Barrett incurred in the "Career Service Council" proceeding. At the same time, the court should afford Mr. Barrett the reasonable attorney fees he incurred in this appeal.